# In the United States Court of Federal Claims

No. 15-348C
(Filed: April 26, 2017)

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

| | | |
|---|---|---|
| KANSAS CITY POWER & LIGHT CO., | \* | |
| | \* | Motion to Compel; RCFC 26; RCFC 34; |
| Plaintiff, | \* | RCFC 36; RCFC 37; Motion to Quash and |
| | \* | for a Protective Order; RCFC 45; Motion for |
| v. | \* | Leave to Use Depositions; RCFC 32 |
| | \* | |
| THE UNITED STATES, | \* | |
| | \* | |
| Defendant. | \* | |

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

Daniel J. Donohue, Washington, DC, for plaintiff.

Amanda L. Tantum, United States Department of Justice, Washington, DC, for defendant.

## OPINION AND ORDER

**SWEENEY**, Judge

Plaintiff, Kansas City Power & Light Co. ("KCP&L"), seeks indemnification by the United States ("defendant" or "the government") under the Contract Disputes Act of 1978 ("CDA"), 41 U.S.C. §§ 7101-7109 (2012), for the cost of settling a wrongful death suit stemming from an electrical accident that occurred on property owned by defendant. Before the court are three motions: (1) defendant's motion to compel the production of documents and answers to requests for admission; (2) plaintiff's motion to quash defendant's subpoena to AEGIS Insurance Services, Inc. ("AEGIS"), and for a protective order; and (3) plaintiff's motion for leave to use depositions taken in the underlying wrongful death suit. The court deems oral argument unnecessary and further notes that, for purposes of this Opinion and Order, it incorporates the factual and procedural histories, as well as the overview of the CDA, set forth in its March 27, 2017 decision denying plaintiff's motion to strike defendant's seventh affirmative defense. See Kan. City Power & Light Co. v. United States, No. 15-348C, 2017 WL 1149587, at *1-3 (Fed. Cl. Mar. 27, 2017).

## I. MOTION TO COMPEL

In its motion to compel, defendant seeks, pursuant to Rule 37(a)(3)(b)(iv) of the Rules of the United States Court of Federal Claims ("RCFC"), to compel the production of requested documents and answers to its requests for admission.

## A. Legal Standards

It is "axiomatic that a trial court has broad discretion to fashion discovery orders[.]" White Mountain Apache Tribe of Ariz. v. United States, 4 Cl. Ct. 575, 583 (1984); see also Schism v. United States, 316 F.3d 1259, 1300 (Fed. Cir. 2002) ("A trial court 'has wide discretion in setting the limits of discovery.'" (quoting Moore v. Armour Pharm. Co., 927 F.2d 1194, 1197 (11th Cir. 1991))); Florsheim Shoe Co., Div. of Interco, Inc. v. United States, 744 F.2d 787, 797 (Fed. Cir. 1984) ("Questions of the scope and conduct of discovery are, of course, committed to the discretion of the trial court."). Although discovery rules "are to be accorded a broad and liberal treatment," Hickman v. Taylor, 329 U.S. 495, 507 (1947), the court must, "[i]n deciding either to compel or quash discovery, . . . balance potentially conflicting goals," Evergreen Trading, LLC ex rel. Nussdorf v. United States, 80 Fed. Cl. 122, 126 (2007). Thus, "discovery, like all matters of procedure, has ultimate and necessary boundaries." Hickman, 329 U.S. at 507.

### 1. RCFC 26

RCFC 26(b)(1) is "the general provision governing the scope of discovery." Sparton Corp. v. United States, 77 Fed. Cl. 10, 21 n.14 (2007). It provides:

> Unless otherwise limited by court order, the scope of discovery is as follows: Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit. Information within this scope of discovery need not be admissible in evidence to be discoverable.

RCFC 26(b)(1). RCFC 26(b) mirrors Rule 26(b) of the Federal Rules of Civil Procedure ("FRCP").[1] Sys. Fuels, Inc. v. United States, 73 Fed. Cl. 206, 215 (2006). The 1946 amendment to FRCP 26(b) "ma[de] clear the broad scope of examination," which included

> not only evidence for use at the trial but also inquiry into matters in themselves inadmissible as evidence but which will lead to the discovery of such evidence. The purpose of discovery is to allow a broad search for facts, . . . or any other matters which may aid a party in the preparation or presentation of his case.

---

[1] "[I]nterpretation of the court's rules will be guided by case law and the Advisory Committee Notes that accompany the Federal Rules of Civil Procedure." RCFC rules committee's note to 2002 amendment.

FRCP 26(b) advisory committee's note to 1946 amendment; <u>see also</u> Int'l Paper Co. v. United States, 36 Fed. Cl. 313, 317 (1996) (citing RCFC 26 and stating that "we are similarly mindful of the generally broad scope of discovery in this court").

FRCP 26(b)(1) was amended in 2000, at which time the advisory committee "introduced a . . . note of caution about the provision . . . ." 8 Charles Alan Wright et al., <u>Federal Practice and Procedure</u> § 2007 (3d ed. 2012). The amendments were "intend[ed for] the parties and the court [to] focus on the actual claims and defenses involved in the action," FRCP 26(b)(1) advisory committee's note to 2000 amendment, whereas previously parties "were entitled to discovery of any information that was not privileged so long as it was relevant to the 'subject matter involved in the pending action,'" 6 James Wm. Moore et al., <u>Moore's Federal Practice</u> ¶ 26.41[2][a] (3d ed. 2008) (quoting the 1983 version of FRCP 26(b)(1)). Accordingly, the 2000 amendments "narrowed the scope of party-controlled discovery to matters 'relevant to any party's claim or defense.'" <u>Id.</u> (quoting FRCP 26(b)(1)). While courts would "retain[ ] authority to order discovery of any matter relevant to the subject matter involved in the action for good cause," the amended rule was "designed to involve the court more actively in regulating the breadth of sweeping or contentious discovery." FRCP 26(b)(1) advisory committee's note to 2000 amendment. Under the current standard, courts are advised to focus upon the specific claims or defenses when determining the scope of discovery. <u>See id.</u> Of course, "[t]his does not mean that a fact must be alleged in a pleading for a party to be entitled to discovery of information concerning that fact." 6 Moore et al., <u>supra</u>, ¶ 26.41[2][a]. Rather, "the fact must be germane to a specific claim or defense asserted in the pleadings for information concerning it to be a proper subject of discovery." <u>Id.</u>

A party's ability to obtain pretrial discovery is not unrestrained. RCFC 26(b)(2)(C) authorizes a court to, "[o]n motion or on its own," limit "[t]he frequency or extent of use of the discovery methods otherwise permitted under these rules" if: (1) the discovery sought is "unreasonably cumulative or duplicative, or can be obtained from some other source that is more convenient, less burdensome, or less expensive"; (2) the party seeking discovery "has had ample opportunity to obtain the information by discovery in the action"; or (3) the "burden or expense of the proposed discovery outweighs its likely benefit, considering the needs of the case, the amount in controversy, the parties' resources, the importance of the issues at stake in the action, and the importance of the discovery in resolving the issues." RCFC 26(b)(2)(C)(i)-(iii).

In addition, parties may themselves limit the scope of discovery by "withhold[ing] information otherwise discoverable by claiming that the information is privileged or subject to protection as trial-preparation material . . . ." RCFC 26(b)(5)(A). Pursuant to the rule, however, the party seeking to do so must "(i) expressly make the claim; and (ii) describe the nature of the documents, communications, or tangible things not produced or disclosed—and do so in a manner that, without revealing information itself privileged or protected, will enable other parties to assess the claim." RCFC 26(b)(5)(A)(i)-(ii). In other words, "the description of each document and its contents must be sufficiently detailed to allow the court to determine whether the elements" of the claimed privilege "have been established." <u>Deseret Mgmt. Corp. v. United States</u>, 76 Fed. Cl. 88, 91 (2007) (internal quotation marks omitted); <u>accord</u> FRCP 26(b) advisory committee's note to 1993 amendment ("The party must . . . provide sufficient information to enable other parties to evaluate the applicability of the claimed privilege or protection."). While

there are no specific requirements, it may be appropriate to include "[d]etails concerning time, persons, [and] general subject matter" in the log containing the descriptions of the material claimed to be privileged.  FRCP 26(b) advisory committee's note to 1993 amendment; see also Yankee Atomic Elec. Co. v. United States, 54 Fed. Cl. 306, 309 (2002) (indicating that "the customary contents of a privilege log" are "a description of the type of document . . ., its topic, date, the writer and recipient, and an explanation as to why the matter is deemed to be privileged").  However, the party claiming privilege "need not reveal so much about the contents of a communication as to compromise the privilege."  Yankee Atomic Elec. Co., 54 Fed.Cl. at 309.

## 2.  RCFC 34

RCFC 34 governs the production of documents.  "A party may serve on any other party a request, within the scope of RCFC 26(b)," to "produce and permit the requesting party . . . to inspect, copy, test, or sample," among other things, "any designated documents or electronically stored information," or "any designated tangible things," RCFC 34(a)(1).  The request "(A) must describe with reasonable particularity each item or category of items to be inspected;" and "(B) must specify a reasonable time, place, and manner for the inspection and for performing the related acts."  RCFC 34(b)(1)(A)-(B).  Additionally, the request "may specify the form or forms in which electronically stored information is to be produced."  RCFC 34(b)(1)(C).

The party to whom the request is directed "must respond in writing within 30 days after being served," though "[a] shorter or longer time may be stipulated to under RCFC 29 or be ordered by the court."  RCFC 34(b)(2)(A); accord 8B Wright et al., supra, § 2213 (indicating that responses should "ordinarily be served within 30 days after service of the request").  Each response "must either state that inspection and related activities will be permitted as requested or state an objection to the rest, including the reasons."  RCFC 34(b)(2)(B).  The failure to make a proper objection to a document production request may result in the waiver of that objection.  See Marx v. Kelly, Hart & Hallman, P.C., 929 F.2d 8, 12 (1st Cir. 1991) ("If the responding party fails to make a timely objection, or fails to state the reason for an objection, he may be held to have waived any or all of his objections.").

## 3.  RCFC 36

RCFC 36 "allows litigants to request admissions as to a broad range of matters, including ultimate facts, as well as applications of law to fact."  In re Carney, 258 F.3d 415, 419 (5th Cir. 2001).  "Requests for admission are not games of 'Battleship' in which the propounding party must guess the precise language coordinates that the responding party deems answerable."  House v. Giant of Md., LLC, 232 F.R.D. 257, 262 (E.D. Va. 2005).  Rather, requests for admission are "intended to expedite the trial and to relieve the parties of the cost of proving facts that will not be disputed at trial, the truth of which is known to the parties or can be ascertained by reasonable inquiry."  8B Wright et al., supra, § 2252.  Thus, RCFC 36, like its counterpart under the FRCP, "serves two vital purposes, both of which are designed to reduce trial time. Admissions are sought, first to facilitate proof with respect to issues that cannot be eliminated from the case, and secondly to narrow the issues by eliminating those that can be."  FRCP 36 advisory committee's note to 1970 amendment.  "For Rule 36 to be effective in this regard,

litigants must be able to rely on the fact that matters admitted will not later be subject to challenge." Carney, 258 F.3d at 419.  Thus, admissions "can serve as the factual predicate for summary judgment." United States v. Kasuboski, 834 F.2d 1345, 1350 (7th Cir. 1987).  Finally, a request for admission is "not objectionable even if [it] require[s] opinions or conclusions of law, as long as the legal conclusions relate to the facts of the case.  [Conversely, r]equests to admit pure conclusions of law unrelated to facts in the case are objectionable." Ransom v. United States, 8 Cl. Ct. 646, 648 (1985) (interpreting Rule 36(a) of the Rules of the United States Court of Claims, which was identical to FRCP 36(a)).

Pursuant to subsection (a) of the rule, "[a] party may serve on any other party a written request to admit, for purposes of the pending action only, the truth of any matters within the scope of RCFC 26(b)(1) relating to:  (A) facts, the application of law to fact, or opinions about either; and (B) the genuineness of any described documents." RCFC 36(a)(1).  In addition, "[e]ach matter must be separately stated." RCFC 36(a)(2).  Furthermore, denials must be detailed:

> If a matter is not admitted, the answer must specifically deny it or state in detail why the answering party cannot truthfully admit or deny it.  A denial must fairly respond to the substance of the matter; and when good faith requires that a party qualify an answer or deny only a part of a matter, the answer must specify the part admitted and qualify or deny the rest.  The answering party may assert lack of knowledge or information as a reason for failing to admit or deny only if the party states that it has made reasonable inquiry and that the information it knows or can readily obtain is insufficient to enable it to admit or deny.

RCFC 36(a)(4).  Similarly, objections must be stated and "[a] party must not object solely on the ground that the request presents a genuine issue for trial." RCFC 36(a)(5).  Finally, if the requesting party moves the court to determine the sufficiency of an answer or objection, the rule provides:

> Unless the court finds an objection justified, it must order that an answer be served.  On finding that an answer does not comply with this rule, the court may order either that the matter is admitted or that an amended answer be served.  The court may defer its final decision until a pretrial conference or a specified time before trial.

RCFC 36(a)(6).

## 4. RCFC 37

RCFC 37 addresses a party's failure to make disclosures or cooperate in discovery and permits the court to award sanctions:

> On notice to other parties and all affected persons, a party may move for an order compelling disclosure or discovery. The motion must include a certification that the movant has in good faith conferred or attempted to confer with the person or party failing to make disclosure or discovery in an effort to obtain it without court action.

RCFC 37(a)(1). The rule further provides: "A party seeking discovery may move for an order compelling an answer, designation, production, or inspection. This motion may be made if . . . a party fails to respond that inspection will be permitted—or fails to permit inspection—as requested under RCFC 34." RCFC 37(a)(3)(B). In addition, RCFC 37 addresses a party's failure to provide sufficient answers to requests for admission promulgated pursuant to RCFC 36:

> If a party fails to admit what is requested under RCFC 36 and if the requesting party later proves a document to be genuine or the matter true, the requesting party may move that the party who failed to admit pay the reasonable expenses, including attorney's fees, incurred in making that proof. The court must so order unless:
>
> (A)  the request was held objectionable under RCFC 36(a);
>
> (B)  the admission sought was of no substantial importance;
>
> (C)  the party failing to admit had a reasonable ground to believe that it might prevail on the matter; or
>
> (D)  there was other good reason for the failure to admit.

RCFC 37(c)(2).

"In order to succeed on a motion to compel discovery, a party must first prove that it sought discovery from its opponent." Petrucelli v. Bohringer & Ratzinger, 46 F.3d 1298, 1310 (3d Cir. 1995). Additionally, an RCFC 37 motion "must include a certification that the movant has in good faith conferred or attempted to confer . . . ." RCFC 37(a)(1). Like its FRCP counterpart, RCFC 37 "does not set forth what must be included in the moving party's certification except to indicate that the document must declare that the movant has 'in good faith conferred or attempted to confer' . . . ." Shuffle Master, Inc. v. Progressive Games, Inc., 170 F.R.D. 166, 171 (D. Nev. 1996). "[G]ood faith cannot be shown merely through the perfunctory parroting of statutory language on the certificate to secure court intervention; rather it mandates a genuine attempt to resolve the discovery dispute through non judicial means." Id. Conferment, in turn, requires that the "moving party must personally engage in two-way communication with the nonresponding party to meaningfully discuss each contested discovery dispute in a genuine effort to avoid judicial intervention." Id.

If the court grants a motion to compel, it "must, after giving an opportunity to be heard, require the party . . . whose conduct necessitated the motion, the party or attorney advising the conduct, or both to pay the movant's reasonable expenses incurred in making the motion, including attorney's fees." RCFC 37(a)(5)(A). Payment must not be ordered if "(i) the movant filed the motion before attempting in good faith to obtain the disclosure or discovery without court action; (ii) the opposing party's nondisclosure, response, or objection was substantially justified; or (iii) other circumstances make an award of expenses unjust." RCFC 37(a)(5)(A)(i)–(iii). Furthermore, if the court denies the motion, then it may issue a protective order pursuant to RCFC 26(c) "and must, after giving an opportunity to be heard, require the movant, the attorney filing the motion, or both to pay the party . . . who opposed the motion its reasonable expenses incurred in opposing the motion, including attorney's fees." RCFC 37(a)(5)(B).

## B. Discussion

### 1. The Parties' Respective Positions

As noted above, in its motion to compel, defendant seeks the production of documents responsive to its requests for production and answers responsive to its requests for admission.[2] Generally, defendant complains that plaintiff cannot simply refuse to provide discovery related to defendant's seventh affirmative defense—the defense of offset—in the hope that the court will, at some point, grant its motion to strike the defense. Def.'s Mot. Compel 2. Specifically, defendant makes the following arguments.

With regard to its requests for production, defendant claims that plaintiff's objections are unsupported. Id. at 9-15. Noting that it does not know whether plaintiff is in fact withholding responsive documents because no privilege log was filed, defendant argues first that plaintiff's belief that the offset defense should be stricken does not relieve plaintiff of its discovery obligations. Id. at 10-12. Second, defendant argues that plaintiff's objections are not sufficiently detailed and therefore should be deemed to have been waived. Id. at 12-14. Specifically, defendant points to plaintiff's objections that (1) each request for production is "vague and ambiguous and overly broad and unduly burdensome and also seeks the production of documents that are neither relevant nor likely to lead to the discovery of admissible evidence," id. at 13 (internal quotation marks omitted); (2) defendant's use of the term "related to" in its requests for production is "vague and ambiguous," id.; (3) defendant's imposition of a thirty-day timeframe for responses is inappropriate, id. at 13-14; and (4) each request for production is inappropriate to the extent it seeks information subject to a protective order, id. at 14. Third, defendant argues that, to the extent plaintiff continues to refuse to produce responsive documents, an adverse inference is warranted. Id. at 14-15.

With regard to its requests for admission, defendant claims that plaintiff's answers are insufficient in that they are conditional and contain unsupported objections. Id. at 15-18. In support of its allegations, defendant points to the fact that while plaintiff denies Request for Admission Nos. 1, 2, 5, and 6, and admits Nos. 3 and 4, it then qualifies those answers by stating that they are given "[s]ubject to and not waiving any of the foregoing objections" discussed in

---

[2] The court notes that defendant did not file a reply in support of its motion to compel.

the "General Objections" and plaintiff's response to Request for Admission No. 1.  Id. at 15.  In addition, defendant claims that plaintiff's responses demonstrate that plaintiff "misunderstands the purpose of requests for admission, which [defendant posits] are used to narrow the scope of issues for litigation—and not for the purpose of discovery of admissible evidence."  Id. at 16. Specifically, defendant refers to (1) plaintiff's objection that defendant's requests for admission are overly broad and unduly burdensome and seek irrelevant evidence; (2) plaintiff's failure to state with specificity why defendant's (a) instructions to its requests for admission and corresponding definitions, (b) thirty-day time frame for providing responses, and (c) requests— to the extent that they seek to impose requirements or obligations greater than those imposed by the RCFC and the discovery order—are objectionable; (3) plaintiff's objection to defendant's requests for admission, to the extent they seek the production of documents; (4) plaintiff's objection to both defendant's requests for admission and its requests for production on the grounds that the information defendant seeks is protected from disclosure by a protective order; and (5) plaintiff's assertion of the attorney-client privilege, work product doctrine, and consulting expert privilege in response to defendant's requests for admission.  Id. at 16-18.

The essence of plaintiff's response to defendant's motion to compel is that defendant has no right to the information it seeks "because the basis for the requested discovery—the proposed insurance offset defense—is barred as a matter of law."  Pl.'s Resp. Mot. Compel 1.  Plaintiff argues:

> As emphasized in KCP&L's Motion to Strike and Reply in Support of its Motion to Strike, the Government should not be entitled to . . . benefit from KCP&L's foresight in obtaining insurance to protect against damages related to accidents such as those underlying the Eubank case.  KCP&L's AEGIS policy was not a condition precedent to the Government's contract with KCP&L and should not reduce the Government's contractual liability to KCP&L.  KCP&L's own business arrangement with an insurer has no bearing on the government's damages in this case.

Id. at 4.

Plaintiff adds, however, that its responses to defendant's requests—both for the production of documents and for admission—were made in good faith.  Id. at 4-5.  With respect to Request for Production Nos. 2, 3, 6, and 7, and Request for Admission Nos. 1, 2, 5, and 6, plaintiff claims not to have any responsive documents.  Id. at 4.  Thus, according to plaintiff, the only discovery requests at issue are those "involving documents reflecting KCP&L's reimbursement by AEGIS under its insurance contract."  Id.  As to these requests, plaintiff claims to have produced:  (1) the AEGIS insurance policy limits; (2) "other information unrelated to KCP&L's correspondence with its insurer, which KCP&L maintains contains privileged information"; (3) the Eubank settlement agreement; (4) copies of the settlement checks issued to the Eubank plaintiffs; and (5) "the structured settlement information which evidenced KCP&L's full payment of the settlement amounts due to plaintiffs."  Id. at 4-5.

## 2. Analysis

First, irrespective of plaintiff's belief regarding the merits of its motion to strike defendant's offset defense, which the court denied on March 27, 2017, see Kan. City Power & Light Co., 2017 WL 1149587, at *8, plaintiff has—at all times—an obligation to respond to valid discovery requests. See RCFC 26(b). At the time defendant propounded its discovery requests, the court had not yet ruled on plaintiff's motion to strike. Thus, plaintiff was obligated to provide defendant with complete responses to its discovery requests or seek a protective order. See Chubb Integrated Sys., Ltd. v. Nat'l Bank, 103 F.R.D. 52, 59 (D.D.C. 1984) ("In ruling on questions of discovery, typically, courts do not determine the legal sufficiency of claims and defenses."); accord Humphreys Exterminating Co., v. Poulter, 62 F.R.D. 392, 394-95 (D. Md. 1974) (noting that it is not ordinarily the function of the court in passing upon objections to interrogatories to decide ultimate questions); Riordan v. Ferguson, 2 F.R.D. 349, 350 (S.D.N.Y. 1942) (noting that until a defense is stricken, it remains valid). Plaintiff may not, as it did in this case, simply refuse to respond to defendant's requests for production of documents and requests for admission on the grounds, inter alia, that defendant's offset defense is irrelevant as a matter of law. In other words, although plaintiff appropriately moved to strike a defense it believed to be invalid, it nevertheless failed to simultaneously comply with its mandatory discovery obligations. Alternatively, plaintiff could have moved for a protective order staying its obligation to respond to discovery pending this court's ruling on its motion to strike. See RCFC 26(c)(1) ("The court may, for good cause, issue an order to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense, . . . .").

Second, with respect to plaintiff's general objections, the court finds as follows. In Objection A, which plaintiff asserts as to both defendant's requests for documents and requests for admission, plaintiff objects to the thirty-day time frame given for answers. Def.'s Mot. Compel, App. 1, 7-8. This objection is wholly without merit, since thirty days is the time allotted by the court's rules for responding to discovery requests. See RCFC 34(b)(2)(A) ("The party to whom the request is directed must respond in writing within 30 days after being served or—if the request was delivered under RCFC 26(d)(2)—within 30 days after the Early Meeting of Counsel (see Appendix A ¶ 3)."); RCFC 36(a)(3) ("A matter is admitted unless, within 30 days after being served, the party to whom the request is directed serves on the requesting party a written answer or objection addressed to the matter and signed by the party or its attorney."). Thus, plaintiff's Objection A lacks merit and is overruled.

In Objection B, plaintiff objects to each request "to the extent it seeks any information or documents that [are] protected from discovery or disclosure by the attorney-client privilege, the attorney work product doctrine, consulting expert privilege, or any other applicable privilege." Def.'s Mot. Compel, App. 2, 8. Defendant argues that the attorney-client privilege does not apply because its requests "are wholly unrelated to any communication between KCP&L and its counsel and merely seek factual answers related to transactions involving KCP&L and third parties—the Eubanks and KCP&L's insurer." Def.'s Mot. Compel 18. Defendant also claims that the work product doctrine does not apply "because RCFC 26(b)(3)(A) protects only 'documents and tangible things,' and does not bar the discovery of the facts that the adverse party has learned, or the existence or nonexistence of documents." Id. Alternatively, defendant

contends that where such an objection has been upheld as to a request for admission, it was "only in limited situations, not presented here." Id.

At this stage, the court will not preclude plaintiff from asserting any privileges in response to defendant's discovery requests. That is to say, the court cannot and will not rule in the abstract. Rather, to the extent that defendant's requests seek privileged documents or other information, plaintiff must, as required by the rules of the court, prepare a detailed privilege log that meets the requirements of RCFC 26(b)(5)(A)(i)-(ii). Thus, plaintiff must make an express claim of privilege and provide defendant with a description of the document, communication, or item such that defendant can meaningfully assess the propriety of the claimed privilege. Similarly, if plaintiff objects to defendant's requests for admission, plaintiff must provide responses that explain its objections pursuant to RCFC 36(a)(4)-(5). The court can only rule on plaintiff's objections—if defendant renews its motion to compel—if those objections are tied to specific requests.

The same is true with respect to Objections C through G, which plaintiff asserts as to both defendant's requests for production and requests for admission. In Objection C, plaintiff objects to each request to the extent that it seeks information subject to "any prior stipulation order, protective order or other order applicable to this discovery." Def.'s Mot. Compel, App. 2, 8. In Objections D and F, plaintiff objects to each request as "overbroad and unduly burdensome" to the extent that it seeks irrelevant information and to the extent that it seeks the identification or production of all documents. Id. In Objection E, plaintiff objects to each request to the extent that it seeks information not in plaintiff's "possession, custody, or control." Id. In Objection G, plaintiff objects to each request to the extent that it seeks irrelevant evidence. Id. As with Objection B, the court cannot rule on Objections C through G because they are not tied to specific discovery requests. Thus, plaintiff's Objections C through G lack merit and are overruled.

In plaintiff's last general objection, Objection H, which plaintiff only asserts in response to defendant's request for production, plaintiff objects to defendant's definition of the terms "insurer" and "policy," claiming that each "includes subject matters that are not relevant to the present case and are thus overbroad and not likely to lead to the discovery of admissible evidence." Id. at App. 9. As with Objection A, this objection is wholly without merit because the court has ruled that plaintiff's AEGIS insurance policy is relevant to defendant's offset defense. See Kan. City Power & Light Co., 2017 WL 1149587, at *6-7. Thus, plaintiff's Objection H lacks merit and is overruled.

Third, with respect to plaintiff's specific objections to defendant's requests for production of documents, the court finds as follows. In Interrogatory No. 1, which precedes Request for Production Nos. 1 through 7, defendant asks: "If you have or had any policy or policies of insurance against which you have made or may make a claim for a defense or coverage as a result of the Eubank litigation, please specify the document of insurance; include the name and address of the insurance company which issued the policy to you, the date of the policy, the limits of the policy, and its effective dates of coverage." Def.'s Mot. Compel, App. 9. In its response, although plaintiff notes its objection to the interrogatory on the grounds that it is "overly broad and unduly burdensome and seeks information that is neither relevant nor likely to

lead to the discovery of admissible evidence," it simultaneously provides details about its AEGIS excess liability insurance policy.  Id.  Then, in its subsequent responses to Request for Production Nos. 1 through 7, plaintiff reasserts its general objections and indicates either that responsive documents have been produced or that it does not possess any responsive documents. For example, in response to Request for Production No. 1, which seeks "[a]ll documents relied upon to answer Interrogatory No. 1," plaintiff produces document nos. KCPL1-55.  Id.  Next, in response to Request for Production No. 2, which seeks "[a]ll documents related to indemnification KCP&L received from an insurer for payments KCP&L made to the Eubank plaintiffs after KCP&L entered into a settlement agreement related to the Eubank litigation," plaintiff indicates that it does not possess any responsive documents:

> See, Response to Request for Production No. 1, which is incorporated herein by reference.  KCP&L also objects to this Request for Documents on the grounds that it is overly broad and unduly burdensome, and vague and ambiguous as to the term "related to".  Without waiving the foregoing objections, KCP&L states that it possesses no documents responsive to this Request.

Id.  In other words, although plaintiff admits to having an insurance policy against which a claim was made as a result of the Eubank litigation and provides defendant with supporting documentation, plaintiff simultaneously states that it does not possess documents related to any indemnification it received from that insurer following the Eubank litigation.  If, in providing the answer it did, plaintiff is attempting to draw a distinction between its receipt of monies from AEGIS pursuant to an excess liability insurance policy versus its receipt of monies from AEGIS pursuant to an indemnification agreement, plaintiff must provide a clear, succinct response.  See Pl.'s Resp. Mot. Compel 4 ("As KCP&L communicated to the Government, KCP&L was not indemnified by an insurer with regard to the Eubank litigation, and no insurer paid amounts to the Eubank plaintiffs or KCP&L's counsel on  KCP&L's behalf.  All other document requests from the Government seek information related to the reimbursement of KCP&L by an insurer for post-settlement payments to the Eubank plaintiffs after settlement. . . .  Even though KCP&L continues to object to production of information related to an affirmative defense that is insufficient as a matter of law, KCP&L has produced information in its possession related to the reimbursement.").  In light of this court's determination that defendant's offset defense is relevant, plaintiff's objection to Interrogatory No. 1 is therefore overruled.  In addition, plaintiff's objections to defendant's requests for production of documents are also overruled. Plaintiff will provide defendant with amended responses to Request for Production Nos. 1 through 7.  If, in so doing, plaintiff identifies responsive documents that are privileged, it will prepare a detailed privilege log for defendant's consideration.  Only if defendant subsequently moves to compel production of these documents will the court rule on the adequacy of plaintiff's privilege claims.

Fourth, with respect to plaintiff's responses to defendant's requests for admission, the court again notes generally that to the extent that plaintiff objects on the ground that the information is irrelevant because defendant's offset defense is not legally viable, the objection is overruled and plaintiff will amend its responses.  To the extent, however, that plaintiff is attempting to draw a distinction between the types of payments made—indemnification versus

reimbursement—plaintiff must do so clearly.  For example, in Request for Admission No. 1, defendant states:  "KCP&L received indemnification from an insurer for payments KCP&L made to the Eubank plaintiffs after KCP&L entered into a settlement agreement related to the Eubank litigation."  Def.'s Mot. Compel, App. 2.  In its response, plaintiff states:

> KCP&L objects to this Request for Admission seeking an insurance-related admission, as beyond the scope of permissible discovery under RCFC 26(b)(1).

> RCFC 26(b)(1) establishes the scope of permissible discovery and specifically provides that "[p]arties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense."  Here, the government requests insurance-related information from the Eubank matter, Case No. 0716-CV07429 filed in the Circuit Court of Jackson County, Missouri, which is not relevant to any claims or defenses in this matter.  Any insurance-related requests are irrelevant as a result of the collateral source rule, which states, in relevant part, that a plaintiff's damages cannot be reduced by the amount of any recoveries from a third party, such as an insurer.  In addition, any recoveries KCP&L received from a pre-existing insurance transaction, have no bearing on [the] Government's breach of the indemnity provision at issue in this case.

> Subject to and not waiving any of the foregoing objections, KCP&L denies Request for Admission No. 1. See, Response to Request for Admission No. 3.

Id. at App. 3.  In this request for admission, defendant seeks confirmation that plaintiff received indemnification payments from its insurer, AEGIS, following plaintiff's settlement of the Eubank case.  Since this request is relevant to defendant's offset defense, plaintiff's objection to Request for Admission No. 1 is overruled.  Plaintiff will amend its response.

In Request for Admission No. 2, defendant states:  "KCP&L received indemnification from an insurer for payments KCP&L made to KCP&L's counsel related to the Eubank litigation, settlement activities, and/or the settlement agreement."  Id. at App. 4.  In its response, plaintiff states:  "See Response to Request for Admission No. 1, which is incorporated by reference into this response.  Subject to and not waiving any of the foregoing objections, KCP&L denies Request for Admission No. 2.  See, Response to Request for Admission No. 4." Id.  In this request for admission, defendant seeks confirmation that plaintiff received indemnification payments from its insurer, AEGIS, for payments plaintiff made to its counsel related to plaintiff's settlement of the Eubank case.  Since this request is relevant to defendant's offset defense, plaintiff's objection to Request for Admission No. 2 is overruled.  Plaintiff will amend its response.

In Request for Admission No. 3, defendant states:  "KCP&L was reimbursed by an insurer for payments KCP&L made to the Eubank plaintiffs after KCP&L entered into a settlement agreement related to the Eubank litigation."  Id.  In its response, plaintiff states:  "See Response to Request for Admission No. 1, which is incorporated by reference into this response.  Subject to and not waiving any of the foregoing objections, KCP&L admits that it was reimbursed, in part, for costs incurred in defending and settling the Eubank matter, Case No. 0716-CV07429 filed in the Circuit Court of Jackson County, Missouri."  Id.  In this request for admission, defendant seeks confirmation that plaintiff received indemnification payments from its insurer, AEGIS, for payments plaintiff made to the Eubank plaintiffs related to its settlement of the Eubank case.  Since this request is relevant to defendant's offset defense, plaintiff's objection to Request for Admission No. 3 is overruled.  Plaintiff will amend its response.

In Request for Admission No. 4, defendant states:  "KCP&L was reimbursed by an insurer for payments KCP&L made to KCP&L's counsel related to the Eubank litigation, settlement activities, and/or the settlement agreement."  Id.  In its response, plaintiff states:  "See Response to Request for Admission No. 1, which is incorporated by reference into this response.  Subject to and not waiving any of the foregoing objections, KCP&L admits that it was reimbursed, in part, for costs incurred in defending and settling the Eubank matter, Case No. 0716-CV07429 filed in the Circuit Court of Jackson County, Missouri."  Id. at App. 4-5.  In this request for admission, as it did in Request for Admission No. 2, defendant seeks confirmation that plaintiff received money from its insurer, AEGIS, for payments plaintiff made to its counsel related to its settlement of the Eubank case.  Since this request is relevant to defendant's offset defense, plaintiff's objection to Request for Admission No. 4 is overruled.  Plaintiff will amend its response.

In Request for Admission No. 5, defendant states:  "An insurer paid the Eubank plaintiffs amounts due the Eubank plaintiffs under the settlement agreement."  Id. at App. 5.  In its response, plaintiff states:  "See Response to Request for Admission No. 1, which is incorporated by reference into this response.  KCP&L denies that an insurer paid the Eubank plaintiffs any amounts due under the settlement agreement.  See, Response to Request for Admission No. 3."  Id.  In this request for admission, defendant again seeks confirmation that the Eubank plaintiffs received payments from plaintiff's insurer, AEGIS, in settlement of its claims against plaintiff.  Since this request is relevant to defendant's offset defense, plaintiff's objection to Request for Admission No. 5 is overruled.  Plaintiff will amend its response.

Lastly, in Request for Admission No. 6, defendant states:  "An insurer paid KCP&L's counsel amounts due KCP&L's counsel related to the Eubank litigation, settlement activities, and/or the settlement agreement."  Id.  In its response, plaintiff states:  "See Response to Request for Admission No. 1, which is incorporated by reference into this response.  KCP&L denies that an insurer paid the KCP&L's counsel any amounts due related to the Eubank litigation.  See, Response to Request for Admission No. 4."  Id.  In this request for admission, defendant seeks confirmation that plaintiff's counsel received payments from plaintiff's insurer, AEGIS, for work related to plaintiff's settlement of the Eubank case.  Since this request is relevant to defendant's offset defense, plaintiff's objection to Request for Admission No. 6 is overruled.  Plaintiff will amend its response.

## II.  MOTION TO QUASH AND FOR A PROTECTIVE ORDER

The second motion before the court is plaintiff's motion to quash defendant's subpoena to AEGIS.  In that subpoena, issued on November 22, 2016, defendant seeks the production of certain documents by December 13, 2016.  Pl.'s Mot. Quash 1.  The subpoena contained four document requests:

> REQUEST NO. 1:  All documents and/or communications related to payments made by AEGIS Insurance Services, Inc. or Associated Electric & Gas Insurance Services Limited related to the <u>Eubank</u> litigation, including, but not limited to, payments to the <u>Eubank</u> plaintiffs and payments to KCP&L, and/or its counsel, consultants, or representatives.

> REQUEST NO. 2:  All documents and/or communications related to the settlement in the <u>Eubank</u> litigation.

> REQUEST NO. 3:  All documents and/or communications related to KCP&L's claims and/or rights to proceeds from the claims brought in KCP&L's "Claim for Reimbursement of Costs in Defense of Wrongful Death Action Contract No. GS06P05TEC0040" and before the United States Court of Federal Claims in Case No. 13-86C and/or Case No. 15-348C.

> REQUEST NO. 4:  All documents and/or communications related to assignments of:  (1) KCP&L's claims and/or rights to proceeds from the claims brought in KCP&L's "Claim for Reimbursement of Costs in Defense of Wrongful Death Action Contract No. GS06P05TEC0040" and before the United States Court of Federal Claims in Case No. 13-86C and/or Case No. 15-348C; (2) KCP&L's right to proceeds from the aforementioned claim or claims; and/or (3) the obligation or obligations of KCP&L, AEGIS Insurance Services, Inc., and/or Associated Electric & Gas Insurance Services Limited to make payments to the <u>Eubank</u> plaintiffs resulting from the settlement.

<u>Id.</u> at 2.  On December 6, 2016, AEGIS responded to defendant by letter, claiming that the subpoena seeks documents in possession of one of the parties to the litigation and that the subpoena is unduly burdensome pursuant to RCFC 45(d)(1).  <u>Id.</u> at 2-3.  On December 8, 2016, plaintiff and defendant participated in a conference call in an attempt to determine which documents were responsive to defendant's subpoena.  <u>Id.</u> at 3.  Following the telephone call, plaintiff produced over 1,000 documents to defendant.  <u>Id.</u>  Plaintiff thus claims that, as a result of this production, defendant has the documents it originally sought from AEGIS.  <u>Id.</u>  In its

motion, therefore, plaintiff seeks to quash defendant's third-party subpoena to AEGIS pursuant to RCFC 45(d)(3)(A), and the entry of a protective order pursuant to RCFC 26(c).[3]

## A.  Legal Standard

RCFC 45 provides:

> On timely motion, the court must quash or modify a subpoena that:
>
> (i)  fails to allow a reasonable time to comply;
>
> (ii)  requires a person who is neither a party nor a party's officer to comply beyond the limitations specified in RCFC 45(c);
>
> (iii)  requires disclosure of privileged or other protected matter, if no exception of waiver applies; or
>
> (iv)  subjects a person to undue burden.

RCFC 45(d)(3)(A).  If a party seeks—pursuant to RCFC 45—to quash a subpoena issued to a third party, it must first establish that it has standing to do so.  Estate of Ungar v. Palestinian Auth., 332 F. App'x 643, 645 (2d Cir. 2009); accord Langford v. Chrysler Motors Corp., 513 F.2d 1121, 1126 (2d Cir. 1975) ("In the absence of a claim of privilege a party usually does not have standing to object to a subpoena directed to a non-party witness." (citing 5A James Wm. Moore, Federal Practice ¶ 45.05(2) (2d ed. 1974))).  "Ordinarily a party has no standing to seek to quash a subpoena issued to someone who is not a party to the action, unless the objecting party claims some personal right or privilege with regard to the documents sought."  9A Charles Alan Wright et al., Federal Practice and Procedure § 2459 (3d ed. 2008); accord Brown v. Braddick, 595 F.2d 961, 967 (5th Cir. 1979) (concluding that movants who failed to assert a valid privilege claim lacked standing to move to quash a subpoena duces tecum directed to a third party).

## B.  Discussion

### 1.  The Parties' Respective Positions

Plaintiff asserts three arguments in support of its motion to quash defendant's third-party subpoena.  Pl.'s Mot. Quash 6-9.  First, plaintiff claims that defendant's subpoena is unduly burdensome to nonparty AEGIS because defendant already sought the same information directly from plaintiff.  Id. at 6.  Second, plaintiff claims that the subpoena seeks information protected from disclosure by the attorney-client privilege, the work product doctrine, and the insurer-insured privilege.  Id. at 6-8.  According to plaintiff, under the common-interest doctrine, communications made by plaintiff or its attorneys to AEGIS related to the Eubank litigation and

---

[3]  Plaintiff also refers to RCFC 45(c)(3)(A) in support of its motion to quash and for a protective order, but there is no such subsection within RCFC 45.

the instant action are protected by the attorney-client privilege or work product doctrine. <u>Id.</u> at 7-8. Third, plaintiff contends that the discovery defendant seeks from AEGIS in the subpoena is irrelevant as a matter of law because defendant's offset defense is irrelevant. <u>Id.</u> at 8-9. Lastly, although not raised as a substantive argument in support of its motion, plaintiff claims that it has standing to move to quash defendant's subpoena to AEGIS because it has a legitimate interest in quashing the subpoena—a claim of privilege as to the subpoenaed materials. <u>Id.</u> at 5-6.

In its response to plaintiff's motion to quash, defendant notes that in addition to issuing a third-party subpoena to AEGIS, it also propounded numerous discovery requests directly on plaintiff. Def.'s Resp. Mot. Quash 2-4. Next, defendant advances two substantive arguments in opposition to plaintiff's motion. First, defendant attacks plaintiff's standing to move to quash the AEGIS subpoena. <u>Id.</u> at 5-11. Defendant argues that (1) plaintiff does not contend that it has standing to raise undue burden or relevance in response to a third-party subpoena, (2) plaintiff's claim that it has a legitimate interest in quashing the subpoena does not relate to undue burden on AEGIS or relevance, and (3) the decisions plaintiff relies on in support of its contention that it has standing to move to quash a third-party subpoena can be distinguished on various grounds—most significantly that several of the cases involve the interests at issue in criminal prosecutions, not civil matters. <u>Id.</u> at 6-9.

Alternatively, defendant argues that even if plaintiff does have standing, AEGIS is not unduly burdened by the subpoena and the material identified in the subpoena is relevant. <u>Id.</u> at 9-14. With respect to the issue of undue burden, defendant contends that but for plaintiff's refusal to provide complete responses to defendant's discovery requests, defendant would not have needed to subpoena AEGIS. <u>Id.</u> at 9-10. In the same vein, defendant further contends that there is no support for plaintiff's suggestion that defendant was obliged to wait for the court's resolution of plaintiff's motion to strike defendant's seventh affirmative defense prior to seeking the desired discovery from an alternative source. <u>Id.</u> at 10-11. Next, defendant challenges plaintiff's assertion that the subpoenaed information "is all equally recoverable from KCP&L," claiming instead that "it is likely that AEGIS Insurance Services, Inc. has additional documents related to these issues that it may not have shared with KCP&L." <u>Id.</u> at 11. Finally, defendant suggests that if the court concludes that the third-party subpoena is unduly burdensome, rather than quashing it, the court should simply "modify it to ameliorate the purported burden." <u>Id.</u>

With respect to the issue of relevance, defendant contends that documents related to "set off amounts paid by AEGIS to KCP&L" are clearly relevant to defendant's offset defense and damages generally. <u>Id.</u> at 12-13. Defendant also notes that AEGIS never timely objected to the third-party subpoena on relevance grounds and therefore the relevance objection was waived. <u>Id.</u> at 13-14.

Defendant's second substantive argument in opposition to plaintiff's motion to quash is that plaintiff cannot demonstrate that it has an interest—based on the attorney-client privilege, work product protection, or insurer-insured privilege—in the documents at issue. <u>Id.</u> at 14-28. First, defendant addresses the insurer-insured privilege, arguing that no such privilege is recognized under federal law. <u>Id.</u> at 14-15. Second, defendant addresses the attorney-client privilege and work product protection. <u>Id.</u> at 15-28. According to defendant, plaintiff's contention that by virtue of the common-interest doctrine, the documents sought are protected

from disclosure lacks merit.  <u>Id.</u>  Specifically, defendant argues that plaintiff can only seek to protect its own documents and that AEGIS never claimed that the material sought was privileged.  <u>Id.</u> at 15.  In addition, defendant argues that even if the common-interest doctrine did apply, the court would have no way of assessing such a claim because neither AEGIS nor plaintiff identified which documents were withheld as either privileged or protected.  <u>Id.</u>  Alternatively, defendant avers that even if the court were to consider whether the common-interest doctrine applies, plaintiff has not shown that it does.  <u>Id.</u> at 16.  According to defendant, plaintiff fails to demonstrate that (1) all of the disclosures it made to AEGIS were "due to actual or anticipated litigation," (2) the communications between AEGIS and KCP&L regarding the "payment of settlement and litigation costs were anything other than business-related," and (3) AEGIS and KCP&L share an identical legal interest such that communications protected by the attorney-client privilege may be shared between them without waiving the privilege.  <u>Id.</u> at 16-18 (internal quotation marks omitted).

To the extent that the common-interest doctrine does apply, defendant argues that the documents sought are not covered by either the attorney-client privilege or work product doctrine.  <u>Id.</u> at 21-28.  Regarding the attorney-client privilege, defendant notes that although the documents sought in Request for Production No. 1 of the third-party subpoena are similar to those sought in defendant's first set of requests for production from plaintiff—both seek information about payments made by AEGIS related to the <u>Eubank</u> litigation—plaintiff only asserted a relevancy objection in response to defendant's first set of requests for production.  <u>Id.</u> at 22-23.  In other words, defendant notes that plaintiff did not object to the first set of requests for production on either attorney-client privilege or work product doctrine grounds, as it now claims with respect to defendant's third-party subpoena.  <u>Id.</u>  Thus, defendant argues that plaintiff has waived the right to now assert that these materials are privileged or protected.  <u>Id.</u> at 23.

Defendant also notes a similar discrepancy between plaintiff's objections to defendant's second set of interrogatories and requests for production and plaintiff's objection to the third-party subpoena.  <u>Id.</u>  Thus, defendant contends that plaintiff cannot assert the attorney-client privilege and work product doctrine in response to defendant's similar Request for Production Nos. 3 and 4 in the AEGIS subpoena.  <u>Id.</u>  Furthermore, defendant notes that although plaintiff claims that the documents defendant seeks in Request for Production No. 18 in its second set of requests for production from plaintiff are protected by both the attorney-client and work product doctrine, plaintiff neglected to produce a log of such documents, as required by RCFC 26(b)(5).  <u>Id.</u> at 24.  Lastly, defendant complains that plaintiff erroneously assumes that every document sought by the third-party subpoena "will be a communication between KCP&L and an attorney to which the attorney-client privilege applies."  <u>Id.</u>

Regarding the work product doctrine, defendant contends that plaintiff fails to identify, through a log, those documents it claims are protected.  <u>Id.</u> at 24-25.  Defendant also notes:

> [T]he fact specific determination as to whether materials were
> created to assist in pending or impending litigation is less likely to
> result in a finding of work product protection when the documents
> sought were created by or for an insurance company in the course

of its investigation and consideration of the claims brought against
the insured.

Id. at 26.  In addition, although defendant argues that plaintiff claims that a great deal of the
information sought in the third-party subpoena "relates to KCP&L's counsel's legal strategy and
evaluation of the underlying Eubank litigation and/or evaluation of the current case," plaintiff
waived the work product protection "by bringing this indemnification lawsuit seeking
reimbursement of attorney's fees."  Id. at 27 (internal quotation marks omitted).  Defendant also
claims that plaintiff waived its right to assert the work product doctrine with respect to
information sought by the third-party subpoena since it failed to do so in response to defendant's
Interrogatory No. 7, which seeks information about "the circumstances surrounding the
preparation of plaintiff's 'claim for Reimbursement of Costs in Defense of Wrongful Death
Action . . . .'"  Id.  Finally, defendant urges the court to find—even if it does not find that
plaintiff waived the work product protection—that plaintiff's counsel's legal strategy and
evaluation of the Eubank case is key to evaluating plaintiff's reasonableness in settling the
underlying matter.  Id. at 28.  According to defendant, the court should, therefore—pursuant to
RCFC 26(b)(3)(A)(ii), which permits a party to obtain work product in discovery when it is
crucial to its case—deny plaintiff's motion to quash and allow defendant access to the
information it seeks.  Id.

In its reply, plaintiff claims that its motion to quash is now moot because AEGIS objected
to and did not comply with the subpoena.  Pl.'s Reply Mot. Quash 1.  However, plaintiff
simultaneously contends that the issues raised in its motion remain unresolved.  Id.  Plaintiff
argues that although its motion was untimely, the court may still consider whether the subpoena
is overbroad and whether the materials sought are privileged.  Id. at 2.  Plaintiff also argues that
it has standing to challenge a third-party subpoena because plaintiff and AEGIS shared a
common interest at the time the privileged communications occurred.  Id. at 3-4.  According to
plaintiff, "[t]he fact that AEGIS waived subrogation or reimbursement from the proceeds of this
subsequent action does not mean that it did not have a common interest in the underlying Eubank
litigation, such as would protect communications between KCP&L and AEGIS related to the
resolution of the case."  Id. at 4.  Lastly, plaintiff contends that its communications with AEGIS
are protected by an insured-insurer privilege where those communications were made with the
purpose of assisting the insurer's attorney in the defense of a claim or possible claim against the
insured.  Id. at 5.

## 2.  Analysis

### a.  Insofar as Plaintiff Claims That Information Responsive to the AEGIS Subpoena Is Privileged, Plaintiff's Motion to Quash Is Premature

Plaintiff claims that it has standing to move to quash the AEGIS subpoena because the
information plaintiff seeks, "communications and documents related to the settlement of the
underlying Eubank matter[, is] . . . protected from disclosure by the attorney-client privilege, the
work-product doctrine, and/or the insurer-insured privilege."  Pl.'s Mot. Quash 6-7.  However, as
with plaintiff's response to defendant's motion to compel discovery, plaintiff's motion to quash
simply does not provide the court with a sufficiently fleshed-out dispute for resolution.  Thus,

plaintiff will obtain from AEGIS copies of the documents and communications that are responsive to defendant's subpoena.  If, based on its review of the information, plaintiff concludes that some or all of it is privileged, it will prepare a detailed privilege log for defendant's consideration.  Of course, this approach presumes that AEGIS has not yet provided defendant with responsive information.  If AEGIS has already complied with defendant's subpoena, and if defendant is already in receipt of information the court later deems privileged, an appropriate protective order, with retroactive effect, will be jointly crafted by the parties pursuant to RCFC 26(c), and then and entered by the court.

### b.  Insofar as Plaintiff Claims That Information Responsive to the AEGIS Subpoena Is Irrelevant, Plaintiff's Motion to Quash Lacks Merit

In addition to claiming that the information defendant seeks in the AEGIS subpoena is protected by various privileges, plaintiff also claims that the subpoena seeks irrelevant information to the extent that it seeks documents and communications related to defendant's offset defense.  However, in denying plaintiff's motion to strike that defense, the court concluded that—at this point in the proceedings—the defense was an appropriate area for discovery.  See Kan. City Power & Light Co., 2017 WL 1149587, at *6-8.

### c.  Plaintiff Lacks Standing to Claim That the AEGIS Subpoena Is Overly Burdensome

Lastly, insofar as plaintiff objects to the AEGIS subpoena on the grounds that it is overly burdensome, plaintiff lacks standing to assert such a claim.  See Winter v. Bisso Marine Co., Civil Action No. 13-5191, 2014 WL 3778833, at *1 (E.D. La. July 29, 2014) ("Plaintiff has no standing to object to the subpoena on the basis that it is unduly burdensome to the third party, . . . ."); Malibu Media, LLC v. John Does No. 1-30, Civil Action No. 12-3896-MAS, 2012 WL 6203697, at *3 (D.N.J. Dec. 12, 2012) ("[A] party generally does not have standing to challenge a third[-]party subpoena based on a theory of undue burden."); Pub. Serv. Co. of Okla. v. A Plus, Inc., No. CIV-10-651-D, 2011 WL 691204, at *5 (W.D. Okla. Feb. 16, 2011) ("Even if a party has standing to challenge a subpoena directed to a third party on privacy or privilege grounds, he may not challenge that subpoena on the grounds that the information imposes an undue burden on the subpoenaed party."); Robertson v. Cartinhour, Civil Action No. AW-09-3436, 2010 WL 716221, at *1 (D. Md. Feb. 23, 2010) ("Generally, to have standing to challenge a subpoena, a person must assert his own legal interests.  A party does not have standing to challenge a subpoena issued to a non-party 'unless the party claims some personal right or privilege in the information sought by the subpoena.'" (quoting United States v. Idema, 118 F. App'x 740, 744 (4th Cir. 2005))).  But see Wahoo Int'l, Inc. v. Phix Doctor, Inc., No. 13cv1395-GPC (BLM), 2014 WL 3573400, at *6 (S.D. Cal. July 18, 2014) (denying motion to quash third-party subpoena on the grounds of burdensomeness because movant failed to provide any evidence regarding the burden that would be imposed on the third party and because the third party did not move to quash on those grounds).

## III.  MOTION FOR LEAVE TO USE DEPOSITIONS

### A.  Legal Standard

The final motion before the court is plaintiff's motion, pursuant to RCFC 32, for leave to use depositions taken in the underlying wrongful death suit.  RCFC 32 generally governs the use of depositions "[a]t a hearing or trial," and states that "all or part of a deposition may be used against a party" if

> (A)  the party was present or represented at the taking of the deposition or had reasonable notice of it;
>
> (B)  it is used to the extent it would be admissible under the Federal Rules of Evidence [("FRE")] if the deponent were present and testifying; and
>
> (C)  the use is allowed by RCFC 32(a)(2) through (8).

RCFC 32(a)(1)(A)-(C).  With respect to depositions taken in an earlier action, the rule specifically provides:

> A deposition lawfully taken and, if required, filed in any federal- or state-court action may be used in a later action involving the same subject matter between the same parties, or their representatives or successors in interest, to the same extent as if taken in the later action.  A deposition previously taken may also be used as allowed by the [FRE].

RCFC 32(a)(8).  In other words, "admission of deposition testimony as evidence under [RCFC 32(a)] is dependent upon meeting the requirements of the rules of evidence."  Long Island Sav. Bank, FSB v. United States, 63 Fed. Cl. 157, 163 (2004); accord Anchor Sav. Bank, FSB v. United States, No. 95-39C, 2005 WL 6112617, at *3 (Fed. Cl. May 17, 2005).  Thus, although "[d]eposition testimony is generally inadmissible at trial because, in many (if not most) circumstances it is hearsay, under FRE 801(d)" certain statements "made by a declarant outside of trial testimony, are not hearsay," and therefore are admissible.  Anchor Sav. Bank, FSB, 2005 WL 6112617, at *1.  Such nonhearsay statements include (1) "a declarant-witness's prior statement," and (2) "an opposing party's statement," as defined by FRE 801(d).  Alternatively, the FRE provide that even if the statements are hearsay, they may nevertheless be admissible under FRE 804.  In order for deposition testimony to be admissible under FRE 804, "the party seeking to admit the prior statement must first demonstrate that the declarant is 'unavailable' as a witness."  Id.; accord FRE 804(a) (describing the criteria for demonstrating unavailability).  Next, the prior statement must qualify as one of the rule's enumerated exceptions.  For example, if the prior statement is offered under the "former testimony" exception, it must be "[t]estimony that: (A) was given as a witness at a trial, hearing, or lawful deposition, whether given during the current proceeding or a different one; and (B) is now offered against a party who had—or, in a civil case, whose predecessor in interest had—an opportunity and similar motive to develop it by

direct, cross-, or redirect examination." FRE 804(b)(1). Finally, pursuant to Appendix A to the RCFC, if a party seeks to introduce hearsay statements at trial, it must file a motion:

> Any party intending to present substantive evidence by way of deposition testimony, other than as provided by [FRE] 801(d), shall serve and file a separate motion for leave to file the transcript of such testimony. The motion shall show cause why the deposition testimony should be admitted and identify specifically the portions of the transcript(s) the party intends to use at trial. See RCFC 32(a). If the motion is granted, only those identified portions of the transcript may be filed.

RCFC App. A, ¶ 15.

## B. Discussion

### 1. The Parties' Respective Positions

In its motion, plaintiff seeks, pursuant to RCFC 32, an order from the court allowing it to use fifteen fact-witness depositions that were taken in Eubank v. Kansas City Power & Light, No. 4:07-cv-00861-GAF (W.D. Mo.), as substantive evidence in the case currently before the court. Pl.'s Mot. Deps. 1-2. According to plaintiff, such use should be permitted because both cases involve the same subject matter and the same parties. Id. at 3-7. With respect to the rule's same party requirement, plaintiff argues that it is of no moment that the plaintiff in Eubank is not a party to the instant action. Id. at 4-5. Rather, plaintiff contends, the key is that defendant had the same motivation to examine the deponents in the underlying action as it does now:

> In the federal Eubank case, the Government had the motive, the opportunity, and the inclination—as shown by the questions and testimony below—to depose witnesses on the same subject matter at issue in this case. Although the Eubank case involved issues of liability as well as the Government's duty to indemnify KCP&L, . . . the case involved the same accident or chain of events.

Id. at 6.

In its response, defendant claims that plaintiff has failed to meet its burden under RCFC 32 to demonstrate that the introduction of the deposition transcripts at trial is permissible. Def.'s Resp. Deps. 2-11. Arguing that plaintiff "vastly oversimplifies the applicability" of RCFC 32, id. at 1, defendant contends first that the rule only permits the introduction of deposition testimony if used against a party at a hearing or trial, id. at 2-3. Therefore, defendant asserts, plaintiff cannot "attempt to use deposition testimony for any possible reason and in any posture." Id. at 3.

Second, defendant contends that the rule only permits the introduction of such testimony to the extent that it would otherwise be admissible—pursuant to the FRE—if offered live. Id. at

4-11.  According to defendant, plaintiff has failed to make such a showing and should not be allowed to do so retroactively.  Id. at 5.  In addition, defendant argues that plaintiff has failed to demonstrate that its proposed use of the deposition testimony is both permitted by RCFC 32(a)'s allowances and not prohibited by RCFC 32(a)'s limitations.  Id. at 5-11.  Specifically, defendant challenges plaintiff's reliance on RCFC 32(a)(8) for the admission of the deposition testimony.  Id. at 7-8.  According to defendant, subsection (a)(8) of the rule merely states that a lawfully taken deposition may be used in a later proceeding involving the same subject matter between the same parties to the same extent as if taken in the later action.  Id. at 7.  The section does not, defendant adds, "create an independent avenue for KCP&L to introduce" the deposition testimony at issue.  Id. at 8.  In the alternative, defendant claims that even if plaintiff satisfied the rule's threshold requirements, plaintiff failed to demonstrate that the Eubank litigation involved the same subject matter and parties.  Id. at 8-11.  According to defendant, the Eubank case dealt with "a wrongful death action alleging negligence and a loss of consortium" against KCP&L, whereas the instant action deals with "KCP&L's claims that the government breached its contract for electrical service with KCP&L by failing to defend it during the Eubank litigation and indemnify it for costs of the litigation, and that such costs and defense were required under the contracts' [sic] indemnification clause."  Id. at 9.  Defendant further maintains that, even under what it describes as a less exacting "substantial identity of the issues" standard, plaintiff cannot meet its burden.  Id. at 9-11.

Third, defendant avers that the case law relied upon by plaintiff in support of its motion is dated, vague, and nonbinding.  Id. at 11-12.

Fourth, defendant contends that even if RCFC 32(a)(8) were found to support plaintiff's use of Eubank deposition testimony at trial, and independent of the rule's other requirements and the FRE, live testimony is always preferred.  Id. at 14-15.  Defendant further notes that "RCFC 32(a)(4)(E) requires that a party demonstrate 'that exceptional circumstances make it desirable—in the interest of justice and with due regard to the importance of live testimony in open court—to permit the deposition to be used,'" and that plaintiff has never claimed that any of the witnesses were unavailable to testify in person.  Id. at 15 (quoting RCFC 32(a)(4)(E)).

Fifth, defendant argues that if the court does grant plaintiff's motion, the court should (1) require plaintiff to designate discrete portions of the deposition testimony it wishes to have admitted; (2) permit defendant to submit counter designations; and (3) permit defendant to include, on its witness list for trial, "any witnesses whose testimony KCP&L attempts to use through designations in lieu of live testimony and subpoena those witnesses to testify in person at trial."  Id.

In addition to claiming that plaintiff has, for the reasons enumerated above, failed to meet its burden under RCFC 32(a) to demonstrate that the introduction of the deposition transcripts at trial is permissible, defendant claims that plaintiff has not demonstrated that it may use the deposition testimony to support a future motion for summary judgment.  Id. at 16-18.  According to defendant, if plaintiff seeks to use portions of the deposition transcripts in support of a motion for summary judgment, plaintiff must—under RCFC 56—"support the admissibility of the deposition testimony . . . [and] demonstrate that such testimony was provided under oath."  Id. at 17.

In its reply, plaintiff advances three arguments. First, plaintiff contends that defendant confuses plaintiff's desire to use the Eubank deposition transcripts at trial in the instant case with their admissibility generally. Pl.'s Reply Deps. 1-4. Plaintiff claims:

> KCP&L solely requests that the deposition testimony taken in the underlying Eubank litigation be permitted to be used in the same manner as any other depositions taken in this case before trial. Those include impeachment at trial, unavailability of a witness at trial, summary judgment, or any other purpose within the court's discretion. KCP&L's motion seeks to use the deposition transcriptions taken in the underlying Eubank case, to which the Government and KCP&L were both parties, in the instant case. KCP&L's motion does not petition the Court, any more than KCP&L petitioned the Court in the underlying proceeding, to admit any specific portion of those depositions at trial. The specific depositions have not been assessed as to their relevance. The issue was not adequately developed in the parties['] memoranda. Some of the deposition testimony may be admissible, and some portions of the depositions properly objected to may be excludable.

Id. at 4.

Second, plaintiff argues that the issues in the instant case are substantially similar to those in the Eubank case such that "[t]he opportunity to cross examine the witnesses on the relevant issues was present, and the witnesses were fairly examined on the subject matter for which their testimony may be relevant in this case." Id. at 5.

Third, plaintiff avers that its motion was "only meant to serve the goals of fairness and efficiency." Id. (alterations omitted). In other words, plaintiff suggests that it only made the motion "so that the witnesses' depositions taken in the underlying case do not have to be duplicated." Id. at 6.

### 2. Analysis

The court will deny plaintiff's motion without prejudice since it is not sufficiently detailed. In its motion, plaintiff seeks permission to use fifteen depositions taken in the Eubank litigation as evidence in the instant case. In support of its motion, plaintiff argues that (1) both cases involve the same subject matter, (2) both cases involve the same insurance policies, and (3) defendant's motivation when it cross-examined the witnesses in the Eubank litigation was the same then as it would be today if it were to cross-examine the witnesses. However, at no point in its motion does plaintiff specify which portions of the depositions it wishes to use in the current action, nor does it indicate the purpose for which it seeks to use the depositions. Curiously, in its reply, although plaintiff appears to acknowledge the flaws in its motion, it nevertheless maintains its position. Specifically, while plaintiff chastises defendant for

conflating plaintiff's desire to use the <u>Eubank</u> depositions from the underlying action with their admissibility generally, plaintiff concedes the vagueness of its motion by acknowledging that no specific portions of the depositions have been (1) identified for admission, or (2) assessed for relevance, or (3) assessed for admissibility.  Thus, while it may be true that the two cases involve the same subject matter and the same parties, that defendant's approach to the witnesses would be the same today as it was when defendant developed their testimonies in defense of the <u>Eubank</u> case, and that plaintiff's stated reason for filing the instant motion—to more efficiently prosecute its case—is laudable, the court cannot, as it stressed above with respect to defendant's motion to compel, rule in the abstract.  Rather, the court must have before it those specific portions of the fifteen deposition transcripts plaintiff seeks to use in this case and the reasons why plaintiff believes such use is permitted by the FRE, as "incorporated by reference into Rule 32 of the Rules of the Court of Federal Claims."  <u>Anchor Sav. Bank, FSB</u>, 2005 WL 6112617, at *1.

## IV.  CONCLUSION

In sum, the court:

1.   **GRANTS** in part and **DENIES** in part, without prejudice, defendant's motion to compel the production of documents and answers to requests for admission.  With respect to defendant's requests for production of documents, plaintiff will provide defendant with amended responses on or by <u>Monday, May 22, 2017</u>.  If plaintiff withholds documents on the basis of privilege, it will provide defendant with a detailed privilege log on or by <u>Monday, May 22, 2017</u>.  With respect to defendant's request for admission Nos. 1 through 6, plaintiff will provide defendant with amended responses on or by <u>Monday, May 22, 2017</u>.

2.   **GRANTS** in part and **DENIES** in part, without prejudice, plaintiff's motion to quash the AEGIS subpoena.  Plaintiff will obtain from AEGIS copies of the documents and communications that are responsive to defendant's subpoena on or by <u>Monday, May 22, 2017</u>.  If, based on its review of the information, plaintiff concludes that some or all of it is privileged, it will prepare a detailed privilege log for defendant's consideration on or by <u>Monday, June 5, 2017</u>.

3.   **DENIES**, without prejudice, plaintiff's motion for leave to use the fifteen fact-witness depositions taken in the underlying wrongful death suit.  If plaintiff desires to renew its motion for leave to use the depositions, it will file its motion on or by <u>Monday, May 22, 2017</u>.

**IT IS SO ORDERED.**

s/ Margaret M. Sweeney
MARGARET M. SWEENEY
Judge