# In the United States Court of Federal Claims

No. 15-348C
(Filed:  December 13, 2018)

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

KANSAS CITY POWER & LIGHT CO.,

                Plaintiff,

v.

THE UNITED STATES,

                Defendant.

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

Motion for Judgment on the Pleadings; RCFC 12(c); RCFC 12(b)(6); Indemnification; Duty to Defend

William L. Yocum, Kansas City, MO, and Roy Bash, Denver, CO, for plaintiff.

Amanda L. Tantum, United States Department of Justice, Washington, DC, for defendant.

## OPINION AND ORDER

**SWEENEY**, Chief Judge

Plaintiff Kansas City Power & Light Co. ("KCP&L") seeks reimbursement of its expenses associated with settling a wrongful death lawsuit.  KCP&L alleges that it is entitled to recoup those costs from defendant because the United States General Services Administration ("GSA") breached its contractual obligation to defend and indemnify KCP&L with respect to the settled claims.  Currently before the court is defendant's motion for judgment on the pleadings pursuant to Rule 12(c) of Rules of the United States Court of Federal Claims ("RCFC").[1]  For the reasons discussed below, the court denies defendant's motion.

---

[1]  In addition to seeking dismissal under RCFC 12(c), defendant nominally moves for partial summary judgment on KCP&L's request for payment of its defense costs in the wrongful death lawsuit.  Defendant, however, presents no argument premised on the summary judgment standard; instead, defendant frames its analysis under the RCFC 12(c) standard.  The court, therefore, construes the "motion for partial summary judgment" as a request for dismissal under RCFC 12(c) and analyzes the issues accordingly.

# I. BACKGROUND

## A. Contracted Services

On August 19, 2005, the GSA entered into a contract with KCP&L for the latter to deliver electric utility service to the Hardesty Federal Complex in Kansas City, Missouri.[2] Pursuant to that agreement, KCP&L would supply electrical service to the GSA at the point of delivery from September 15, 2004, to September 14, 2009.[3]  In addition, the GSA agreed to indemnify KCP&L for activities related to its work supplying electrical service.  Specifically, the GSA was obligated to

> indemnify, save harmless and defend [KCP&L] against all claims, demands, cost or expense, for loss, damage or injury to persons or property, in any manner directly or indirectly connected with, or growing out of the distribution or use of the electric service by the [GSA] at or on the [GSA]'s side of the point of delivery.

Compl. Ex. 6 at 21.  KCP&L alleges that, pursuant to this contract, it provided the GSA with electrical service to, among other places, Building 13—an electrical vault in the Hardesty Federal Complex.

## B. Underlying Litigation

While KCP&L was providing electrical service to the Hardesty Federal Complex, David Eubank—a GSA employee—sustained fatal injuries in Building 13.  He suffered those injuries as he was, allegedly, working with equipment related to electrical service on the GSA's side of the point of delivery.  Following Mr. Eubank's death, his widow (the "Eubank claimant") filed a

---

[2]  The facts in Part I are derived from the (1) complaint and its exhibits in this case; (2) complaint in the underlying wrongful death case, Eubank v. Kansas City Power & Light Co., No. 0716-CV07429 (Mo. Cir. Ct.); and (3) orders in the state and federal iterations of the Eubank case, id.; Eubank v. Kansas City Power & Light Co., No. 07-0861-CV-W-GAF (W.D. Mo.).  See Rocky Mountain Helium, LLC v. United States, 841 F.3d 1320, 1325-26 (Fed. Cir. 2016) (explaining what records can be considered when evaluating a motion to dismiss); Pucciariello v. United States, 116 Fed. Cl. 390, 401 (2014) (noting that the contents of a complaint in another case can be reviewed without converting a motion to dismiss into a motion for summary judgment); see also A & D Auto Sales, Inc. v. United States, 748 F.3d 1142, 1147 (Fed. Cir. 2014) (reviewing the denial of a dismissal under RCFC 12(b)(6) and noting that the court may review of "matters incorporated by reference or integral to the claim, items subject to judicial notice, [and] matters of public record" (quoting 5C Charles Alan Wright & Arthur R. Miller, Federal Practice & Procedure § 1357 (3d ed. 2004))).

[3]  The "point of delivery" was defined as "[t]he point at which [KCP&L's] conductors and/or equipment (other than [KCP&L's] meter installation) make electrical connection with the [GSA's] installation . . . ."  Compl. Ex. 6 at 8.

lawsuit in state court (the "Eubank action") against KCP&L in which she pleaded negligence and loss-of-consortium claims stemming from the incident in Building 13.

After being served with the complaint, KCP&L brought two GSA employees into the proceeding as third-party defendants.  The United States substituted itself for the GSA employees, and removed the case to federal court.  Shortly thereafter, the United States was dismissed from the case.  Subsequently, KCP&L alleges that it reached a settlement with the Eubank claimant after the GSA refused to defend KCP&L in the underlying proceeding. KCP&L alleges that it paid (1) $2,250,000.00 to the Eubank claimant as part of the settlement and (2) $1,756,138.14 in legal fees, court costs, and expenses (collectively, "litigation expenses") to defend itself in the Eubank action.

### C.  Procedural History

On April 6, 2015, KCP&L filed its complaint in the instant case, seeking to recover what it paid in connection with the Eubank action.[4]  KCP&L pleads two claims:  Count I - contractual indemnity and Count II - breach of contract.  With regard to the contractual indemnity claim, KCP&L alleges that the GSA was obligated to indemnify KCP&L for its expenses in the Eubank action because the claims in that case were connected to the distribution of electrical service on the GSA's side of the point of delivery.  As for the breach-of-contract claim, KCP&L pleads that the GSA failed to comply with its contractual obligation to defend and indemnify KCP&L in the Eubank action.  For each claim, KCP&L avers that it is entitled to recover the litigation expenses and settlement costs it incurred in resolving the Eubank claimant's claims.

After KCP&L filed its complaint and the parties completed some discovery, defendant filed the instant motion for judgment on the pleadings.  The motion is now fully briefed.  The parties did not request oral argument, and the court deems oral argument unnecessary.  Thus, defendant's motion is now ripe for adjudication.

## II.  STANDARD

A motion for judgment on the pleadings "is designed to provide a means of disposing of cases when the material facts are not in dispute between the parties and a judgment on the merits can be achieved by focusing on the content of the competing pleadings . . . ."  5C Wright & Miller, supra, § 1367 (footnote omitted) (discussing Federal Rule of Civil Procedure 12(c)).  The "legal standard applied to evaluate a motion for judgment on the pleadings is the same as that for a motion to dismiss."  Peterson v. United States, 68 Fed. Cl. 773, 776 (2005); see id. (noting that courts "have routinely construed a motion to dismiss for failure to state a claim filed after the answer as a motion for judgment on the pleadings").  Thus, judgment on the pleadings "is

---

[4]  KCP&L previously sued the United States in this court for claims arising from the Eubank action.  The United States moved to dismiss that complaint, and the parties subsequently filed a joint stipulation of dismissal without prejudice because KCP&L had failed to exhaust its administrative remedies.  Following that dismissal, KCP&L submitted a certified claim and request for a final decision to the GSA contracting officer, who denied the claim on January 27, 2015.

appropriate where there are no material facts in dispute and the [movant] is entitled to judgment as a matter of law." N.Z. Lamb Co. v. United States, 40 F.3d 377, 380 (Fed. Cir. 1994).  When the government moves the court for judgment on the pleadings, "each of the well-pled allegations in the complaint[ ] is assumed to be correct, and the court must indulge all reasonable inferences in favor of the plaintiffs." Atlas Corp. v. United States, 895 F.2d 745, 749 (Fed. Cir. 1990).  The court's ruling "is based on the substantive merits of the claims and defenses as alleged in the non-movant's pleadings." J.M. Huber Corp. v. United States, 27 Fed. Cl. 659, 662 (1993).

## III. ANALYSIS

Defendant moves to dismiss KCP&L's claims on the theory that the GSA was not obligated to defend and indemnify KCP&L in the Eubank action.  Defendant's arguments, as a general matter, concern the breadth of the contractual indemnification provision (which includes a duty-to-defend component).  The scope of that provision is a matter of contract interpretation, see United States v. Seckinger, 397 U.S. 203, 209-10 (1970); cf. Deprenyl Animal Health, Inc. v. Univ. of Toronto Innovations Found., 297 F.3d 1343, 1349 (Fed. Cir. 2002) ("[D]etermining whether . . . claims fall within the scope of the arbitration clause is a question of contract interpretation."), which is governed by federal law, Prudential Ins. Co. of Am. v. United States, 801 F.2d 1295, 1298 (Fed. Cir. 1986) ("It is well settled that contracts to which the government is a party . . . are normally governed by federal law, not by the law of the state where they are made or performed.").  When "existing federal law is not determinative," the court "tak[es] into the account" the "best in modern decision and discussion," id., which involves "looking to general . . . contract law principles as they are embodied in state law pronouncements," Ginsberg v. Austin, 968 F.2d 1198, 1200 (Fed. Cir. 1992).

### A. Indemnification

Defendant first moves to dismiss that portion of KCP&L's complaint premised on the GSA's duty to indemnify.  Defendant argues that the GSA was not required to indemnify KCP&L in connection with the Eubank action or, in the alternative, was not obligated to indemnify KCP&L for its litigation expenses.  With respect to its broader argument, defendant asserts that the GSA was not contractually required to indemnify KCP&L for claims premised on KCP&L's negligence—such as those pleaded in the Eubank action—because those claims are not within the scope of the indemnification provision.  Relying on expressions of state law, defendant contends that the contract does not reflect that the parties intended KCP&L to be absolved of liability for its negligence.

The use of an indemnification provision to shift liability for one's own negligence to the indemnitor is an unusual and extraordinary measure.  E.g., Jacobs Constructors, Inc. v. NPS Energy Servs., Inc., 264 F.3d 365, 372 (3d Cir. 2001).  As such, under federal law, "a contractual provision should not be construed to permit an indemnitee to recover for his own negligence unless the court is firmly convinced that such an interpretation reflects the intention of the parties." Seckinger, 397 U.S. at 211.  In Seckinger, the United States Supreme Court ("Supreme Court") explained that contracting parties must "clearly and unequivocally" indicate their intention to shift the risk to the indemnitor, id. at 215, but are not required to "include an

'indemnify and hold harmless' clause or . . . explicitly state that indemnification extends to injuries occasioned by the indemnitee's negligence," id. at 212 n.17; see also Gibbs v. United States, 599 F.2d 36, 41 (2d Cir. 1979) ("[W]e would find attractive the view that only such an explicit reference could support indemnification for the indemnitee's negligence . . . .  But Seckinger . . . makes clear that such explicit reference is not required.").

        To assess whether the necessary intent is evident from the contract, the court relies on Seckinger and its progeny because the former is binding precedent and the latter, by virtue of interpreting binding precedent, is more persuasive than the decisions cited by KCP&L and defendant addressing approaches used in various states.  When interpreting Seckinger, "courts [have] concluded that [the Supreme Court] strongly implied that 'indemnify and hold harmless' language . . . provides evidence of a mutual intent to indemnify the indemnitee against his own negligence."[5]  Rhoades, 986 F. Supp. at 868.  Indeed, the Supreme Court's explanation in Seckinger that "hold harmless" language is not necessary to find the requisite intent raises the

> clear inference that a clause which does in fact utilize "hold harmless" language indicates the intent of the parties for the indemnity to operate despite negligence by the indemnitee.  This is to say, if neither "hold harmless" language or an express disclaimer is required, the negative inference arises that the presence of either is a strong indication that indemnity is intended in spite of or regardless [of] negligence on the part of the indemnitee.

Smith v. United States, 497 F.2d 500, 508 (5th Cir. 1974).  Another important consideration is whether the parties agreed that the indemnitor must provide indemnification for "all claims" or some variation thereof.  The inclusion of such language suggests that the parties intended for the indemnitee to be indemnified for its negligence.  E.g., Gibbs, 599 F.2d at 40; Capozziello v. Brasileiro, 443 F.2d 1155, 1159 (2d Cir. 1971).  Of particular import here, courts following Seckinger have concluded that parties sufficiently indicate their intention to provide indemnification for an indemnitee's negligence when the contract includes a "hold harmless"

---

        [5]  This pronouncement is supported by a significant body of case law.  E.g., Gibbs, 599 F.2d at 40 ("[T]he clause contains the terms, 'save harmless and indemnify,' which, as Justice Brennan indicated [in Seckinger], do help show an intent to encompass indemnification for the indemnitee's negligence."); Pickett v. United States, 724 F. Supp. 390, 394 n.1 (D.S.C. 1989) ("A fair inference to be from [the] language in Seckinger is that 'hold harmless' language, while not necessary, would indicate an intent to allow indemnification for the indemnitee's negligence"); Zetek v. United States, 516 F. Supp. 1260, 1262 (E.D. Pa. 1981) ("While neither the presence nor absence of [a hold harmless clause] is conclusive, the presence of such language certainly warrants considerable weight in construing the parties' intent.").  See generally Rhoades v. United States, 986 F. Supp. 859, 864-66 (D. Del. 1997) (analyzing decisions in which courts relying on Seckinger concluded that an indemnification provision covered the indemnitee's negligence).

provision and coverage extends to "all claims." Gibbs, 599 F.2d at 40;[6] Smith, 497 F.2d at 507; Rhoades, 986 F. Supp. at 868-89. The indemnification provision at issue in this case tracks the language that other courts applying federal law have concluded reflects the necessary intent to provide coverage for an indemnitee's negligence. Specifically, the parties' intention for KCP&L to be indemnified for its own negligence can be gleaned from their inclusion, in the contract, of a "save harmless" provision that applies to "all claims," especially absent any countervailing evidence. See, e.g., Gibbs, 599 F.2d at 40; Smith, 497 F.2d at 508; Zetek, 516 F. Supp. at 1263. In other words, KCP&L can be indemnified for its own negligence so long as the other conditions in the indemnification provision are satisfied. Therefore, contrary to defendant's argument, the fact that the Eubank claimant pleaded that KCP&L was negligent does not foreclose KCP&L's indemnification claim.

With respect to its narrower argument, defendant asserts that the GSA was not obligated to indemnify KCP&L for its litigation expenses in connection with the Eubank action because those expenses do not satisfy the contractual perquisites for indemnification. Specifically, defendant takes the position that those expenses are not indemnifiable because they were not for (1) a claim, demand, cost, or expense and (2) a loss, damage, or injury to persons or property.[7] With regard to the first condition, defendant contends that KCP&L's litigation expenses do not qualify as a claim, demand, cost, or expense pursuant to the meaning courts afford those terms in indemnification provisions. As to the second condition, defendant asserts that KCP&L paid its litigation expenses to receive advice or obtain experts rather than for a loss, damage, or injury to persons or property.

The critical question is: What must be shown to establish a right to indemnification of litigation expenses? With regard to recouping attorney's fees under an indemnification provision, the "generally held view [is] that indemnification agreements contemplate payment for attorney's fees incurred in litigation with third parties concerning the matter indemnified against, regardless of whether they say so."[8] E. C. Ernst, Inc. v. Manhattan Constr. Co. of Tex.,

---

[6] In Gibbs, the United States Court of Appeals for the Second Circuit ("Second Circuit") proffered another basis for its conclusion: the indemnitor agreed to provide indemnification "regardless of whether [the covered] claims . . . may be attributable to the fault, failure, or negligence of the [indemnitee]." 599 F.2d at 40-41. This reason, however, was independent from the Second Circuit's determination that the "hold harmless" and "all claims" language reflected the necessary intent. Id.; see also Zetek, 516 F. Supp. at 1263 (noting that the Second Circuit in Gibbs provided two, independent reasons for its conclusion).

[7] Defendant does not address the other conditions for indemnification, which further restrict KCP&L's right to indemnification to liabilities that are "directly or indirectly connected with, or growing out of the distribution or use of the electric service by the [GSA] at or on the [GSA's] side of the point of delivery." Compl. Ex. 6 at 21.

[8] The court's decision to follow this understanding of the law is buttressed by the fact that other courts applying federal common law have also done so. See, e.g., In re Fitzgerald Marine & Repair, Inc., 619 F.3d 851, 864 (8th Cir. 2010) (noting that, in the federal maritime context, an indemnification provision includes an obligation to pay costs and fees).

551 F.2d 1026, 1037 (5th Cir. 1977).  Furthermore, indemnitees are generally permitted to recover "reasonable and proper legal costs and expenses, even though not expressly mentioned." 42 C.J.S. Indemnity § 24 (2018).  Indeed, the "reimbursement of [litigation expenses] is presumed to have been the intent of the draftsman unless the agreement explicitly says otherwise."  Sweet v. United States, 63 Fed. Cl. 591, 599 (2005) (quoting Peter Fabrics, Inc. v. S.S. Hermes, 765 F.2d 306, 316 (2d Cir. 1985));[9] accord Warren Drilling Co. v. Equitable Prod. Co., 621 F. App'x 800, 806 (6th Cir. 2015) (noting that "most jurisdictions . . . presume that [litigation expenses] incurred in defending an indemnified claim are shifted to the indemnitor"). The court finds the presumption that litigation expenses are indemnifiable be more persuasive than the approaches in the authority discussed by defendant because the presumption "gives effect to the very nature of indemnity, which is to make the party whole."  E. C. Ernst, 551 F.2d at 1037.

In light of the above, defendant misses the mark by not engaging with the critical issue: whether the parties explicitly stated that litigation expenses were not indemnified.  See Sweet, 63 Fed. Cl. at 599.  Defendant fails to point to any language in the contract explicitly excluding such expenses, and the court also finds no provision to that effect.  Moreover, defendant would not prevail even if the court ventured beyond the lack of an explicit statement rebutting the presumption that an indemnitee can recover its reasonable litigation expenses.  First, the parties' use of the phrase "all claims, demands, cost or expense" is consistent with language that other courts have found to encompass litigation expenses.  E.g., Natco Ltd. P'ship v. Moran Towing of Fla., Inc., 267 F.3d 1190, 1194 (11th Cir. 2001) (collecting examples).  Second, the phrase "cost or expense" would be meaningless if it did not reflect coverage for litigation expenses because any other indemnifiable expenditures are already covered by the requirement that the GSA indemnify KCP&L for "claims" or "demands."[10]  The court, therefore, interprets the indemnification provision as providing coverage for litigation expenses to avoid rendering superfluous portions of the provision.  See NVT Techs., Inc. v. United States, 370 F.3d 1153, 1159 (Fed. Cir. 2004) ("An interpretation that gives meaning to all parts of the contract is to be preferred over one that leaves a portion of the contract useless, inexplicable, void, or superfluous.").

## B.  Duty to Defend

Defendant also seeks to dismiss that part of KCP&L's complaint concerning the GSA's purported breach of its duty to defend KCP&L.  Defendant first argues that the GSA was not required to defend KCP&L in the Eubank action because the Eubank claimant pleaded claims based on negligence, and negligence claims are not covered by the indemnification provision. See also Nat'l R.R. Passenger Corp. v. Rountree Transp. & Rigging, Inc., 286 F.3d 1233, 1261

---

[9]  Although Sweet involved entitlement to attorney's fees under a statute, the court in that decision first addressed "well established" principles applicable to indemnification provisions. Sweet, 63 Fed. Cl. at 599.  Those principles are instructive here.

[10]  Other than litigation expenses, the court cannot identify (and defendant does not suggest) any expenses that the GSA would be obligated to indemnify that would not be categorized as payment for a "claim" or "demand."

(11th Cir. 2002) (explaining that the duty to defend depends on whether "the underlying facts contained in the complaint can be fairly read to support a claim covered by the indemnification provision").  The central premise of this argument is flawed because, as explained above, a claim based on allegations that KCP&L was negligent is subject to indemnification if the other conditions in the indemnification provision are satisfied.  See supra Section III.A.

Defendant next argues that the GSA was not obligated to defend KCP&L because the GSA and KCP&L had conflicting interests with regard to defending the Eubank action. Defendant relies on the notion, expressed in the Restatement (Second) of Judgments, that an "indemnitor cannot properly be called on to take control of the defense of an action" if there is a conflict of interest between the indemnitor and indemnitee.  Restatement (Second) of Judgments § 57 cmt. c (Am. Law Inst. 1982).  Under the Restatement, there is a conflict of interest when "the injured party's claim may be upheld on different grounds, one of which is within the terms of the indemnity obligation and the other of which is not."  Id.  Defendant asserts that such a conflict existed:  if KCP&L's liability in the Eubank action had been presented to a fact finder at trial, KCP&L would have sought a finding that Mr. Eubank's injury occurred at or on the GSA's side of the point of delivery (a necessary condition for indemnification), while the GSA would have sought a finding that the injury occurred on KCP&L's side.  Because of that conflict, defendant avers that the GSA was not obligated to provide KCP&L with a defense in the Eubank action.

Defendant reads too much into the Restatement provision.  The noted portion of the provision does not stand for the proposition that an indemnitor has no obligation to provide a defense when there is a conflict of interest between the indemnitor and indemnitee.  Rather, the indemnitor merely cannot be "called on to take control of the defense" when there is a conflict. Id. (emphasis added).  When a conflict of interest precludes the indemnitor from controlling the defense, the indemnitor fulfills its obligation to provide a defense by hiring or paying for separate counsel that is not acting pursuant to the indemnitor's directions.[11]  See Metlife Capital Corp. v. Water Quality Ins. Syndicate, 100 F. Supp. 2d 90, 96 (D.P.R. 2000) (explaining that, when there is a conflict of interest, the party with the duty to defend generally hires independent counsel and cedes control of the defense to that counsel); see also 14 Steven Plitt et al., Couch on Insurance § 202:37 (3d ed. 2018) ("Although the insurer, pursuant to its duty to defend, may pick up the 'tab' for the insured's lawyer, the insurer must, unless insured consents, relinquish all control over the lawyer once the insurer and insured turn out to have antagonistic interests."). Because the duty to defend persists despite a conflict of interest, defendant fails to demonstrate that the GSA was relieved of its obligation to defend KCP&L because of a purported conflict of interest that would arise while defending against the Eubank claimant's claims.

---

[11]  This understanding also comports with common sense; defendant espouses a view that would effectively render the duty to defend a nullity in most indemnification contexts.  Indeed, if an indemnitee is going to be found liable in the underlying proceeding, the indemnitor and indemnitee will often have conflicting interests with regard to how liability is established.  An indemnitee's goal in that situation is to be found liable on grounds covered by the indemnification agreement, while the indemnitor's ideal outcome is for liability to be established for reasons not covered by the agreement.

**IV.  CONCLUSION**

In sum, defendant fails to establish as a matter of law that the GSA was not obligated to defend or indemnify KCP&L in the <u>Eubank</u> action.  Thus, the court **DENIES** defendant's motion for judgment on the pleadings.  The parties shall file a joint status report by **no later than Thursday, January 10, 2019,** suggesting further proceedings.

**IT IS SO ORDERED.**

<u>s/ Margaret M. Sweeney</u>
MARGARET M. SWEENEY
Chief Judge