# In the United States Court of Federal Claims

No. 15-348C
(Filed Under Seal:  April 25, 2019)
(Reissued for Publication:  May 10, 2019)*

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

| | | |
|---|---|---|
| KANSAS CITY POWER & LIGHT CO., | * | |
| | * | |
| Plaintiff, | * | Motion for Summary Judgment; RCFC 56; |
| | * | Indemnification; Duty to Defend; |
| v. | * | Negligence; Contract Disputes Act; Statute |
| | * | of Limitations; Offset; Collateral Source |
| THE UNITED STATES, | * | Rule; Contract Remedies; Subject Matter |
| | * | Jurisdiction |
| Defendant. | * | |

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

Roy Bash, Denver, CO, for plaintiff.

Amanda Tantum, United States Department of Justice, Washington, DC, for defendant.

## OPINION AND ORDER

**SWEENEY**, Chief Judge

Plaintiff Kansas City Power & Light Co. ("KCP&L") seeks reimbursement of its expenses associated with settling a wrongful death lawsuit.  KCP&L alleges that it is entitled to recoup those costs from defendant because the United States General Services Administration ("GSA") breached its contractual obligation to defend KCP&L and indemnify KCP&L for its expenses in that case.  Defendant moves for summary judgment pursuant to Rule 56 of the Rules of the United States Court of Federal Claims ("RCFC").  For the reasons discussed below, the court grants in part and denies in part defendant's motion.

## I.  FACTS

On August 19, 2005, the GSA entered into a contract to obtain electrical service for the Hardesty Federal Complex ("Hardesty Complex") from KCP&L, Compl. ¶ 6, the only electricity provider that serviced the area, Def.'s Mot. App. ("DA") 176.  The contract included conditions of service that KCP&L was legally required to apply to every similarly situated customer. Compl. ¶¶ 39-40; see also Compl. Ex. 8 at 2 (informing the GSA that negotiation would be futile

---

\*  The court issued this opinion under seal and asked the parties to propose redactions. The parties filed a joint status report on May 9, 2019, in which they stated that they had no proposed redactions.

because KCP&L's "rates, terms, and conditions are required by law to be uniform for all customers within each customer class"). See generally Compl. Ex. 6 (conditions of service). Of particular import here, one of those conditions of service was that the customer (here, the GSA) agree to defend and indemnify KCP&L with respect to claims related to the latter's work supplying electrical service. Compl. Ex. 6 at 22. Specifically, the GSA was obligated to

> indemnify, save harmless and defend [KCP&L] against all claims, demands, cost or expense, for loss, damage or injury to persons or property, in any manner directly or indirectly connected with, or growing out of the distribution or use of the electric service by the [GSA] at or on the [GSA's] side of the point of delivery.

Id. Pursuant to this contract, KCP&L provided the GSA with electrical service to, among other places, Building 13—an electrical vault in the Hardesty Complex. Compl. ¶ 9.

KCP&L, after entering into its contract with the GSA, obtained excess-liability insurance from Associated Electric and Gas Insurance Services Limited ("AEGIS").[1] DA 145; see also Excess Insurance, Black's Law Dictionary (10th ed. 2014) ("An agreement to indemnify against any loss that exceeds the amount of coverage under another policy."). See generally DA 1-54 (policy). Pursuant to the policy, AEGIS agreed to indemnify KCP&L for covered losses in excess of KCP&L's $1,000,000 self-insured retention. Id. at 3-4. AEGIS and KCP&L further agreed, in a section of the policy titled "Subrogation," that

> [i]nasmuch as this POLICY is excess insurance [KCP&L's] right of recovery against any person or organization cannot be exclusively subrogated to [AEGIS]. It is, therefore, understood and agreed that in case of any payment hereunder, [AEGIS] will act in concert with all other interests concerned[ ] (including [KCP&L's]) in the exercise of such rights of recovery. The apportioning of any amount which may be so recovered shall follow the principle that any interest (including [KCP&L's]) which has paid an amount over and above any payment hereunder, shall first be reimbursed up to the amount paid by it; [AEGIS] is then to be reimbursed out of any balance then remaining up to the amount paid hereunder; lastly, the interests (including [KCP&L's]) of which this coverage is in excess are entitled to claim the residue, if any. Expenses necessary to the recovery of any such amounts shall be apportioned between the interests concerned (including [KCP&L's]), in the proportion of their respective recoveries as finally settled.

Id. at 15. In the next section of the policy, titled "Changes and Assignment," AEGIS and KCP&L expressly agreed that "[t]he terms of this POLICY shall not be waived or changed, nor

---

[1] Specifically, KCP&L's parent company—Great Plains Energy, Inc.—procured coverage under a policy that included its subsidiaries. DA 8; see also id. at 145 (explaining how KCP&L obtained coverage); id. at 204 (acknowledging that KCP&L is a wholly owned subsidiary of Great Plains Energy, Inc.).

shall an assignment of interest under this POLICY be binding, except by an Endorsement to this POLICY issued by [AEGIS]." Id. at 16.

While KCP&L was providing electrical service to the Hardesty Complex, David Eubank—a GSA employee—sustained fatal injuries in Building 13 on August 10, 2006.  Compl. ¶ 15.  On March 27, 2007, his widow (the "Eubank claimant") filed a lawsuit in state court (the "Eubank action")—on behalf of herself and her children—against KCP&L in which she pleaded negligence and loss-of-consortium claims stemming from the incident in Building 13.  See DA 56-61.

Shortly after the Eubank action was filed, KCP&L retained the services of Shughart Thompson & Kilroy ("Shughart"), a law firm, to defend KCP&L in the Eubank action.  See id. at 62.  Shugart began providing legal services related to that case on April 3, 2007, and first provided KCP&L with an invoice for those services on June 12, 2007.  See id.  KCP&L paid that invoice on June 28, 2007.  See id. at 220-21.

As part of their work in the Eubank action, Shughart attorneys prepared and filed KCP&L's third-party petition against two GSA employees.  Id. at 67-77.  In response to the third-party petition, the United States—represented by Assistant United States Attorney Charles Thomas ("AUSA Thomas")—substituted itself for the federal employees and removed the case to the United States District Court for the Western District of Missouri ("district court") on November 15, 2007.  Id. at 79-82.

On December 18, 2007, Lawrence Ward—a Shughart attorney—sent a letter to AUSA Thomas in which Mr. Ward stated:

> I am writing this letter on behalf of [KCP&L] to demand that your client, the
> United States of America, agree to defend, indemnify and hold harmless
> [KCP&L] against all claims, demands, costs or expenses for loss, damage or
> injury to plaintiffs Kembra Eubank, et al. in [the Eubank action].  This demand is
> based upon the contractual obligations of the United States of America . . . .

Id. at 87.  On March 6, 2008, Thomas Fisher—another Shughart attorney—sent a letter to AUSA Thomas in which Mr. Fisher requested that the United States answer Mr. Ward's December 18, 2007 letter.  Id. at 98.  The next day—March 7, 2008—AUSA Thomas responded that he would "get together a response to [the] December 18 letter.  However, as I told [Mr. Ward] by phone not long after the letter, I am confident that the United States cannot in any event agree to indemnify KCP&L or hold it harmless."  Id. at 103.  Consistent with AUSA Thomas's message, the United States neither defended KCP&L in the Eubank action nor indemnified KCP&L for its expenses in that case.  Id. at 158.

On April 17, 2009, the district court dismissed the United States from the Eubank action and remanded the case to the state court.  See Compl. ¶ 26-27; see also Order 8, Eubank v. Kan. City Power & Light, No. 07-0861-CV-W-GAF (W.D. La. Apr. 27, 2009).  KCP&L and the Eubank claimant subsequently agreed to a settlement, which the state court approved on May 18, 2010.  Compl. ¶ 27.

On November 17, 2010, KCP&L submitted a claim for reimbursement to its excess-liability insurer—AEGIS—for some of the expenses that KCP&L incurred in defending and settling the Eubank action.  DA 106; see also id. at 145 (describing KCP&L's relationship with AEGIS).  Specifically, KCP&L requested $3,010,764.64 for reimbursement of its settlement and defense costs—the sum of its settlement expense ($2,250,000.00) and defense costs ($1,760,764.64) minus the self-insured retention ($1,000,000.00).  Id. at 106.  AEGIS paid the claim on November 23, 2010.  Id. at 108.

On September 12, 2012, KCP&L and AEGIS executed an agreement titled "Waiver of Subrogation/Reimbursement Interest and Assignment" ("Assignment Agreement").[2]  Id. at 109-10.  In the portion of the agreement germane to the present motion, KCP&L and AEGIS stated:

> It is hereby agreed that [AEGIS] waives any and all rights to subrogation or reimbursement it may have or be entitled to as set forth in the said Excess Liability Insurance Policy and hereby assigns in full, without recourse, all rights, title and action it has or may have pertaining in any way to the Eubank case or the recovery against any other party of money expended in that case to which it may otherwise be entitled, all such monies and recovery to be considered the sole and exclusive property of Great Plains Energy, Inc. and [KCP&L].

> It is further agreed that all fees and expenses known or unknown arising out of any recovery, settlement or suit against any party is and shall remain the sole responsibility of Great Plains Energy, Inc. and [KCP&L].  Great Plains Energy, Inc. and [KCP&L] each expressly agrees not to seek any reimbursement from AEGIS related to the Eubank case.

> It is the intent of the parties to be legally bound by this agreement.

Id. at 109.

On June 25, 2014, KCP&L submitted a claim to the contracting officer ("CO") requesting reimbursement from the GSA for the expenses that KCP&L incurred in defending and settling the Eubank action.  See generally Compl. Ex. 1.  Specifically, KCP&L claimed that it was owed $4,006,138.14:  $2,250,000.00 for the settlement and $1,756,138.14 in defense costs.[3]  Id. at 2.  The CO denied the claim on January 27, 2015.  See generally Compl. Ex. 5.

---

[2]  KCP&L and AEGIS did not (1) identify the Assignment Agreement as an endorsement to the policy (despite doing so for other changes) or (2) style the agreement in the same manner as the other endorsements to the policy.  See DA at 20-53 (endorsements executed with contract); id. at 109-10 (Assignment Agreement); see also id. at 16 (allowing changes, waivers, or assignments only if there is an endorsement).

[3]  KCP&L, for unstated reasons, requested more for its defense costs from AEGIS than from the CO.  Compare DA 106 (requesting that AEGIS pay $1,760,764.64 for defense costs), with Compl. Ex. 1 at 2 (requesting that the CO award $1,756,138.14 for defense costs).

## II.  PROCEDURAL HISTORY

On April 6, 2015, KCP&L initiated this suit to recover what it paid in connection with the Eubank action.  KCP&L alleges that the GSA breached its contractual duties to defend and indemnify KCP&L in connection with that case.[4]  Specifically, KCP&L avers that the GSA was obligated to defend and indemnify KCP&L because the Eubank claimant's claims were connected to the distribution of electrical service on the GSA's side of the point of delivery.  KCP&L asks the court to award it $4,006,138.14—in the sum of the $2,250,000.00 it paid to settle the Eubank action and the $1,756,138.14 it paid to defend itself in that case.

Defendant moves for summary judgment.  After the completion of initial briefing on that motion, the court directed KCP&L to file an amended complaint.  The court explained that an amended complaint was necessary because KCP&L argued in its response brief that it was litigating assigned claims but did not plead such claims in its complaint as required by RCFC 9(n).[5]  After KCP&L filed an amended complaint, the parties filed a joint status report in which KCP&L maintained that it was not litigating assigned claims.  The court proceeded to strike KCP&L's amended complaint because it was neither compliant with RCFC 9(n) nor responsive to the court's order:  KCP&L did not discuss assigned claims.  Subsequently, the court invited the parties to file supplemental summary judgment briefing on damages and the related assignment issues.  The parties have now fully briefed defendant's motion for summary judgment.[6]  The parties did not request oral argument, and the court deems oral argument unnecessary.  Thus, defendant's motion is ripe for adjudication.

## III.  STANDARD OF REVIEW

Summary judgment is appropriate when there is no genuine issue of material fact and the moving party is entitled to a judgment as a matter of law.  RCFC 56(a); Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986).  A fact is material if it "might affect the outcome of the suit under the

---

[4]  KCP&L technically pleads one claim for "contractual indemnity" and another claim for "breach of contract," but KCP&L alleges in both claims that the GSA breached the same contractual obligations:  the duties to defend and indemnify.  Compare Compl. ¶¶ 57-65 (contractual indemnity), with id. ¶¶ 66-75 (breach of contract).  The court sees no reason to afford significance to the labels assigned by KCP&L especially given that the parties, through multiple rounds of briefing, have not drawn any distinction between the claims.  Therefore, the court construes KCP&L's pleading as containing a breach-of-contract claim related to the GSA's duty to defend ("duty-to-defend claim") and another breach-of-contract claim pertaining to the GSA's duty to indemnify ("indemnification claim").

[5]  Pursuant to RCFC 9(n), a party "pleading a claim or part of a claim, ownership of which was acquired by assignment or other transfer, . . . must include a statement describing when and upon what consideration the assignment or transfer was made."

[6]  In this decision, any citations to briefs refer to the briefs that the parties filed in connection with defendant's motion for summary judgment.

governing law." <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 248 (1986).  An issue is genuine if it "may reasonably be resolved in favor of either party." <u>Id.</u> at 250.

The moving party bears the initial burden of demonstrating the absence of any genuine issue of material fact.  <u>Celotex</u>, 477 U.S. at 323.  The nonmoving party then bears the burden of showing that there are genuine issues of material fact for trial.  <u>Id.</u> at 324.  Both parties may carry their burden by "citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials" or by "showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact." RCFC 56(c)(1)(B).  However, "[i]f the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." <u>Anderson</u>, 477 U.S. at 249-50 (citations omitted).  Entry of summary judgment is mandated against a party who fails to establish "an element essential to that party's case, and on which that party will bear the burden of proof at trial." <u>Celotex</u>, 477 U.S. at 322.

The court must draw all inferences from the underlying facts in the light most favorable to the nonmoving party.  <u>Matsushita Elec. Ind. Co. v. Zenith Radio Corp.</u>, 475 U.S. 574, 587 (1986).  However, the court must not weigh the evidence or make findings of fact.  <u>See Anderson</u>, 477 U.S. at 249 ("[A]t the summary judgment stage the judge's function is not himself to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial."); <u>Contessa Food Prods., Inc. v. Conagra, Inc.</u>, 282 F.3d 1370, 1376 (Fed. Cir. 2002) ("On summary judgment, the question is not the 'weight' of the evidence, but instead the presence of a genuine issue of material fact . . . ."), <u>abrogated on other grounds by Egyptian Goddess, Inc. v. Swisa, Inc.</u>, 543 F.3d 665 (Fed. Cir. 2008) (en banc); <u>Ford Motor Co. v. United States</u>, 157 F.3d 849, 854 (Fed. Cir. 1998) ("Due to the nature of the proceeding, courts do not make findings of fact on summary judgment."); <u>Mansfield v. United States</u>, 71 Fed. Cl. 687, 693 (2006) ("[T]he Court may neither make credibility determinations nor weigh the evidence and seek to determine the truth of the matter.  Further, summary judgment is inappropriate if the factual record is insufficient to allow the Court to determine the salient legal issues." (citation omitted)).

## IV.  ANALYSIS

Defendant moves for summary judgment on the grounds that (1) KCP&L's claims are barred by the statute of limitations and (2) KCP&L cannot shift liability for its own negligence because it possessed superior bargaining power when negotiating with the GSA.  In the alternative, defendant moves for summary judgment on that portion of KCP&L's request for damages based on expenses that were reimbursed by AEGIS.  Otherwise stated, defendant asks the court to reduce KCP&L's potential recovery.

The crux of defendant's motion concerns contractual rights and remedies.  Because the government is a party to the contract at issue, the court is guided in its analysis by federal common law when there is no controlling statutory or regulatory provision.  <u>See Prudential Ins. Co. of Am. v. United States</u>, 801 F.2d 1295, 1298 (Fed. Cir. 1986) ("It is well settled that

contracts to which the government is a party . . . are normally governed by federal law, not by the law of the state where they are made or performed."). When "existing federal law is not determinative," the court "tak[es] into the account" the "best in modern decision and discussion," id., which involves "looking to general . . . contract law principles as they are embodied in state law pronouncements," Ginsberg v. Austin, 968 F.2d 1198, 1200 (Fed. Cir. 1992).

## A. Statute of Limitations

Defendant first argues that KCP&L's claims are barred by the statute of limitations set forth in the Contract Disputes Act of 1978 ("CDA") because the claims accrued more than six years before KCP&L submitted them to the CO. Specifically, defendant asserts that there are three viable accrual events—when KCP&L's attorneys started billing for the Eubank action (April 2007), when KCP&L received an invoice from its attorneys (June 2007), or when KCP&L learned that the GSA would not provide indemnification (March 2008)—and each of those events occurred more than six years before KCP&L submitted its claim in June 2014. Defendant contends that, at each of the aforementioned times, KCP&L knew all the facts establishing the GSA's purported liability.[7] KCP&L counters that its claims accrued on May 18, 2010—when the Missouri state court approved the settlement in the Eubank action—because that is when the GSA's liability became fixed in a sum certain. Even if the court concludes that KCP&L's claims are time barred, KCP&L argues that its failure to timely submit its claim to the CO does not preclude it from recovering those expenses that were incurred in the six years before KCP&L submitted the claim.

Pursuant to the statute of limitations in the CDA, a party seeking relief under a government contract must file its claim with the CO within six years of the claim accruing.[8] 41 U.S.C. § 7103(a)(1), (4) (2012). There are two considerations that bear on an analysis of the statute of limitations: what is a claim and when does it accrue? See id. § 7103(a)(4). A claim is "a written demand or written assertion by one of the contracting parties seeking, as a matter of

---

[7] In its reply brief, defendant highlights the specific (and narrow) legal propositions it raised in its motion that KCP&L did not directly respond to in its response brief and asserts that KCP&L's failure to address those contentions is a concession. See, e.g., Def.'s Reply 20 (asserting that "KCP&L does not respond to our explanation that the collateral source rule does not apply . . . [so KCP&L has conceded that [defendant's position] is correct"). Defendant's approach is not helpful to the court. It is clear from KCP&L's response brief that KCP&L is not making the dispositive concessions "identified" by defendant; indeed, KCP&L mounts a vigorous (and at times persuasive) argument for why it should prevail. Simply stated, KCP&L's decision to not respond to discrete portions of defendant's argument is not a concession when it is clear from KCP&L's brief that KCP&L is disputing defendant's thesis. Cf. The Ravens Grp., Inc. v. United States, 119 Fed. Cl. 100, 110 (2007) (concluding that the plaintiff conceded an issue by not responding to the main point of the defendant's argument).

[8] The failure to timely file a claim with the CO does not deprive this court of jurisdiction over the dispute; instead, the government can raise the plaintiff's noncompliance with the statute of limitations as an affirmative defense. Sikorsky Aircraft Corp. v. United States, 773 F.3d 1315, 1320-22 (Fed. Cir. 2014).

right, the payment of money in a sum certain, the adjustment or interpretation of contract terms, or other relief arising under or relating to the contract." 48 C.F.R. § 2.101 (2018).  A claim accrues on "the date when all events, that fix the alleged liability of either the Government or the contractor and permit assertion of the claim, were known or should have been known.  For liability to be fixed, some injury must have occurred.  However, monetary damages need not have been incurred."  Id. § 33.201.  The critical question is when KCP&L knew or should have known all of the events fixing the GSA's purported liability such that KCP&L could present its duty-to-defend and duty-to-indemnify claims to the CO.

## 1. Duty-to-Defend Claim

Turning first to KCP&L's duty-to-defend claim, there are four distinct events that needed to occur to fix liability:  (1) KCP&L and the GSA's execution of a contract, (2) the GSA's purported obligation to provide KCP&L with a defense, (3) the GSA's refusal to provide KCP&L with a defense, and (4) KCP&L's sustainment of damages as a result of the GSA's refusal.  See San Carlos Irrigation & Drainage Dist. v. United States, 877 F.2d 957, 959 (Fed. Cir. 1989) (explaining the elements of a breach-of-contract claim); see also Alder Terrace, Inc. v. United States, 161 F.3d 1372, 1377 (Fed. Cir. 1998) ("Generally, '[i]n the case of a breach of a contract, a cause of action accrues when the breach occurs.'" (quoting Mfrs. Aircraft Ass'n v. United States, 77 Ct. Cl. 481, 523 (1933))).  The undisputed facts establish the dates for each of these events.  First, the parties executed a contract on August 19, 2005.  Second, the GSA's duty to provide a defense would have ripened on the day that the Eubank claimant filed her complaint—March 27, 2007—because a party becomes obligated to provide a defense when the allegations in the underlying complaint encompass conduct covered by a duty-to-defend provision.  See, e.g., Callas Enters., Inc. v. Travelers Indem. Co. of Am., 193 F.3d 952, 955 (8th Cir. 1999) ("To determine whether an insurer does have a duty to defend, a court compares the allegations made in the underlying complaint with the relevant language of the insurance policy."); see also Lagestee-Mulder, Inc. v. Consol. Ins. Co., 682 F.3d 1054, 1056 (7th Cir. 2012) ("The factual allegations of the complaint determine whether there is a duty to defend.").[9] Third, KCP&L became aware that the GSA would not defend KCP&L when AUSA Thomas conveyed that decision to KCP&L's attorney on March 7, 2008.[10]  Fourth, KCP&L incurred

---

[9]   In the absence of controlling precedent or directives in statutory or regulatory text, the court looks to the state-law principle espoused in decisions such as Callas and Lagestee for analyzing when a party becomes obligated to provide a defense under a contract provision.  See Ginsberg, 968 F.2d at 1200.  The aforementioned decisions are well-reasoned and persuasive; indeed, a determination at the outset of litigation of whether a party has a duty to defend is important for giving the party contracting for such a defense the benefit of its bargain.  Moreover, the court has not found (and the parties have not provided) any authority suggesting that a different standard is appropriate.

[10]   The GSA decided not to defend KCP&L earlier than March 7, 2008.  See DA 103 (explaining that AUSA Thomas conveyed the United States' position to Mr. Ward (KCP&L's attorney) "not long after" Mr. Ward's December 18, 2007 letter).  The court, however, must focus on when KCP&L became (or should have been) aware of the GSA's breach.  See 48 C.F.R. § 33.201 (explaining that a claim accrues when the claimant knew or should have known the facts giving rise to liability); accord FloorPro, Inc. v. United States, 680 F.3d 1377, 1381

damages as soon as it received AUSA Thomas's message because AUSA Thomas conveyed that KCP&L should continue paying its own costs in the Eubank action and would not receive reimbursement for previously incurred attorney's fees.  Simply stated, KCP&L knew all the facts fixing the GSA's purported liability for the breach of its contractual duty to defend by March 7, 2008—more than six years before KCP&L submitted its claim to the CO.

KCP&L misses the mark with its argument that it was unable to file a claim on March 7, 2008, because it could not request a sum certain until it stopped incurring legal fees in the Eubank action on May 18, 2010—the date that its settlement was approved by the state court.  A party can submit a request for a sum certain even if it will incur further damages.  See Tecom, Inc. v. United States, 732 F.2d 935, 937 (Fed. Cir. 1984) (explaining that a party does not need to resubmit a claim to the CO if the claim increases as a result of matters developed in litigation); J.S. Alberici Constr. Co., ENGBCA No. 6179, 97-1 BCA ¶ 28639 ("A 'sum certain' need not remain fixed throughout the claims process, so long as the information provided to the Government is accurate to the extent possible, and provides adequate notice of a monetary claim against the Government to permit adjudication.").  Indeed, "the fact that [a claimant's] losses would continue to accrue does not relieve [the claimant] of its obligation to provide a certified claim regarding its losses to date."  L-3 Commc'n Integrated Sys., L.P. v. United States, 132 Fed. Cl. 325, 333 n.8 (2017).  Thus, KCP&L could have requested a sum certain reflecting what it had paid its attorneys in the Eubank action before the conclusion of that case.

In sum, KCP&L's duty-to-defend claim accrued by no later than March 7, 2008—the date when KCP&L could request a sum certain and knew all the facts fixing the GSA's purported liability.  Because KCP&L did not file that claim with the CO until June 25, 2014, more than six years after it accrued, the claim is barred by the CDA's statute of limitations.

The court is not swayed by KCP&L's argument that the statute of limitations only bars that part of its damages that were incurred more than six years before it filed a claim with the CO.  Damages can only be divided in that manner if they flow from a continuing claim.  See Wason v. United States, 179 Ct. Cl. 623, 631 (1967); see also Boling v. United States, 220 F.3d 1365, 1373 (Fed. Cir. 2000) (explaining that, with a continuing claim, each breach of a duty constitutes a new cause of action).  To fall within the scope of the continuing claim doctrine, a "plaintiff's claim must be inherently susceptible to being broken down into a series of independent and distinct events or wrongs, each having its own associated damages."  Brown Park Estates-Fairfield Dev. Co. v. United States, 127 F.3d 1449, 1456 (Fed. Cir. 1997).  The doctrine, however, does not apply when a plaintiff "really only point[s] to one alleged wrong by

_____

(Fed. Cir. 2012) (holding that a claim accrued when the claimant became aware of the breach of contract).  Although AUSA Thomas informed KCP&L's counsel prior to March 7, 2008, of the information necessary for KCP&L to believe that the GSA was in breach of its defense obligation, the parties did not supply a date for that conversation.  DA 103.  Thus, March 7, 2008, is the earliest date that KCP&L knew or should have known that the GSA would not provide a defense supported by the materials before the court.  To the extent that there is a dispute over whether KCP&L became aware of the GSA's purported breach earlier than March 7, 2008, the dispute is immaterial because an earlier date would still result in KCP&L's duty-to-defend claim being untimely.

the government, which accrued all at once at one point in time, even though it may have had later adverse effects . . . ." <u>Id.</u> at 1457.  KCP&L concedes that its duty-to-defend claim arose from a single event and is not a continuing claim.  Indeed, the record does not reflect a series of distinct events or wrongs with their own damages.  Thus, KCP&L cannot recover damages for the GSA's purported breach of its duty to defend because the entire claim is barred by the statute of limitations.  The court, therefore, dismisses KCP&L's duty-to-defend claim in its entirety.

## 2. Duty-to-Indemnify Claim

Unlike KCP&L's duty-to-defend claim, defendant has not established that KCP&L's duty-to-indemnify claim is barred by the statute of limitations.  For the purposes of defendant's motion, the court need only focus on when the GSA purportedly became obligated to indemnify KCP&L for the expenses it incurred in the <u>Eubank</u> action.  <u>See San Carlos</u>, 877 F.2d at 959 (explaining that a breach-of-contract claim requires, among other things, a duty or obligation to perform).  The undisputed facts reflect that the earliest that the GSA could incur that responsibility was May 18, 2010—the date that the Missouri state court approved the <u>Eubank</u> action settlement—because a judgment or settlement in the underlying case is a condition precedent to a right to indemnification.[11]  <u>See, e.g.</u>, <u>Colony Ins. Co. v. Peachtree Constr., Ltd.</u>, 647 F.3d 248, 253 (5th Cir. 2011) ("[T]he duty to indemnify is triggered by the actual facts establishing liability in the underlying suit, and whether any damages caused by the [indemnitee] and later proven at trial are covered by the terms of the [contract]."); <u>see also United Nat.'l Ins. Co. v. Dunbar & Sullivan Dredging Co.</u>, 953 F.2d 334, 338 (7th Cir. 1992) (explaining that a request for declaratory judgment concerning an indemnification obligation is not ripe until the

---

[11]  The court acknowledges that requiring the underlying case be resolved before a party can file an indemnification claim is in conflict with <u>Kellogg Brown & Root Services, Inc. v. United States</u>, 115 Fed. Cl. 168 (2014).  In <u>Kellogg</u>, another judge on this court held that a party can submit an indemnification claim to the CO before the underlying lawsuit is resolved relying on a determination by the Armed Services Board of Contract Appeals ("ASBCA") that such a claim was appropriate.  <u>Id.</u> at 186 n.9 (discussing <u>In re Boeing Co.</u>, ASBCA No. 54853, 06-1 BCA ¶ 33270).  The undersigned finds those two decisions are of little help.  First, this court is not bound by the <u>Kellogg</u> or ASBCA decisions.  <u>Dellew Corp. v. United States</u>, 855 F.3d 1375, 1382 n.3 (Fed. Cir. 2017) (this court's decisions); <u>Gen. Elec. Co., Aerospace Grp. v. United States</u>, 929 F.2d 679, 682 (Fed. Cir. 1991) (ASBCA decisions).  Second, this court is not persuaded by the reasoning in those decisions because the judges in both cases merely reached a conclusion without explaining how liability could be fixed before the indemnitor was obligated to provide indemnification.  <u>See Griffy's Landscape Maint. LLC v. United States</u>, 51 Fed. Cl. 667, 673 (2001) ("We reject those [nonprecedential decisions] which we find illogical, unpersuasive, or just plain wrongheaded.  We accept as helpful authority, albeit not binding precedent, those we find sound.").  Moreover, at least one other judge on the United States Court of Federal Claims ("Court of Federal Claims") has entertained the notion that a final decision in the underlying action is required before a party is required to provide indemnification.  <u>See Tex. Instruments Inc. v. United States</u>, No. 09-701C, 2011 WL 2784579, at *4 (Fed. Cl. June 13, 2011).

indemnitee is held liable in the underlying suit).[12]  Therefore, KCP&L's indemnification claim accrued no earlier than May 18, 2010, which forecloses defendant's argument that KCP&L's duty-to-indemnify claim accrued more than six years before it sought relief from the CO on June 25, 2014.[13]

## B.  Shifting Liability for Negligence

Defendant next argues that the GSA was not obligated to defend or indemnify KCP&L in the Eubank action because the underlying claims concerned KCP&L's negligence.  Specifically, defendant asserts that KCP&L could contractually shift liability for its own negligence (via an indemnification or duty-to-defend provision) to the GSA only if the parties possessed similar bargaining power.  Defendant contends that the contract between the GSA and KCP&L was not negotiated between equal parties because KCP&L was the only electricity provider servicing the Hardesty Complex—i.e., KCP&L had all the power.  KCP&L counters that (1) it is not a monopoly, (2) state regulators neutralized KCP&L's superior bargaining position, and (3) it is not seeking indemnification for its own negligence.

Defendant's argument rests on a faulty premise:  the notion that KCP&L possessed superior bargaining power.  Although the GSA could not obtain electrical service from another provider, KCP&L operated under a legal framework that prevented it from taking advantage of the GSA's lack of options.  Indeed, as KCP&L explained to the GSA, KCP&L was required by law to provide uniform terms for all similarly situated customers.  Simply stated, both parties lacked any bargaining power because neither was in a position to negotiate changes to the contract.  The court, therefore, is not persuaded by defendant's argument that the GSA was not obligated to indemnify KCP&L because of unequal bargaining power during contract negotiations.[14]

---

[12]  In the absence of any controlling precedent, the court is persuaded by the state-law principle espoused in Dunbar and Peachtree concerning when a party becomes obligated to provide contractual indemnification.  See supra note 9 (explaining significance of state-law principles).  The court's conclusion is bolstered by the fact that the predecessor to this court, the United States Claims Court, embraced the notion when addressing federal common law outside the CDA context.  See Keene Corp. v. United States, 12 Cl. Ct. 197, 210 (1987).

[13]  Defendant also does not prevail to the extent that it is arguing that KCP&L could have filed a nonmonetary claim seeking an order compelling indemnification prior to the conclusion of the Eubank action.  KCP&L's duty-to-indemnify claim—whether monetary or nonmonetary—could not accrue until the GSA's purported liability was fixed, which occurred when the Eubank action was settled.

[14]  The court's conclusion would apply equally to KCP&L's duty-to-defend claim, but the court dismissed that claim for the reasons stated earlier in this decision.  See supra Section IV.A.1.

**C. Double Recovery**

In the alternative to it granting summary judgment on both of KCP&L's claims, defendant argues that the court should reduce KCP&L's potential recovery by the amount that KCP&L was reimbursed for its expenses in the <u>Eubank</u> action by AEGIS.  First, defendant asserts that KCP&L made a judicial admission in its response brief that the disputed portion of its damages is based on AEGIS's assignment of its subrogation claims to KCP&L.  Defendant avers that the court lacks jurisdiction to entertain such assigned claims, and that the assignment was ineffective pursuant to 31 U.S.C. 3727, commonly referred to as the Assignment of Claims Act or the Anti-Assignment Act ("Act" or "Anti-Assignment Act").  31 U.S.C. § 3727 (2012).  Second, assuming that KCP&L is litigating its own rights, defendant contends that the court must offset KCP&L's potential recovery by the amount that KCP&L was reimbursed for its expenses in the <u>Eubank</u> action by AEGIS to prevent a double recovery that is barred by <u>LaSalle Talman Bank, F.S.B. v. United States</u>, 317 F.3d 1363 (Fed. Cir. 2003).  Defendant asserts that KCP&L would reap such a recovery if it prevails in the instant case because, by virtue of AEGIS's waiver of its subrogation and reimbursement rights, KCP&L would not be required to repay the insurance proceeds it received.  In other words, defendant contends that KCP&L would gain an impermissible windfall:  if it prevailed, KCP&L would recover its defense and settlement expenses from defendant while keeping the payments it received from AEGIS for the same expenses.

KCP&L counters that it is entitled to recover all the damages it requested.  With respect to the judicial admission, KCP&L argues that it did not make an admission regarding assignment because the statements at issue concerned its litigation position and judicial admissions are limited to facts.  Relatedly, KCP&L maintains that it is litigating its own claims rather than any assigned claims, and further represents that it could not litigate assigned claims from AEGIS because such claims are not cognizable in this court.  As to defendant's offset argument, KCP&L responds that its decision to obtain insurance does not relieve the GSA of its obligation to provide indemnification for all of KCP&L's expenses.  KCP&L argues that <u>LaSalle</u> is not applicable here because KCP&L is seeking damages for the GSA's breach of an indemnification agreement.  KCP&L grounds its argument in the court's explanation in <u>Sweet v. United States</u>, 63 Fed. Cl. 591 (2005), that a doctor and an affiliated university could obtain reimbursement of their defense costs under an indemnification agreement even though those expenses were paid by their insurer.

The court turns first to the parties' dispute over the basis of KCP&L's request for damages concerning the expenses that AEGIS reimbursed.  Defendant avers, based on the purported judicial admission, that those damages are premised on KCP&L litigating claims it received (via assignment) from AEGIS.  KCP&L counters that it made no such admission and is litigating its own claims.  The court, however, need not (and does not) determine whether KCP&L is merely litigating its own claims or is also pursuing assigned claims because KCP&L cannot obtain damages for its reimbursed expenses under either theory.

Insofar as KCP&L is attempting to obtain damages for assigned claims, it is asserting a right to recovery based on AEGIS acquiring claims against the GSA via subrogation and

purportedly assigning those claims to KCP&L.[15]  See Subrogation, Black's Law Dictionary (10th ed. 2014) (explaining that "an insurer that has paid a loss under an insurance policy is entitled to all the rights and remedies belonging to the insured against a third party with respect to any loss covered by the policy"); see also Fireman's Fund Ins. Co. v. England, 313 F.3d 1344, 1351 (Fed. Cir. 2002) (describing subrogation).  KCP&L, in its supplemental response brief, correctly acknowledges that it could not pursue such assigned claims in this court.  KCP&L is correct for at least two reasons.  First, the court lacks jurisdiction to entertain the purportedly assigned subrogation claims.  Although 28 U.S.C. § 1491(a) waives sovereign immunity for claims founded on a contract with the United States and arising under the CDA, that waiver does not extend to subrogation claims by an insurer.  Ins. Co. of the W. v. United States, 100 Fed. Cl. 58, 64 (2011) (addressing a contract claim under 28 U.S.C § 1491(a)(1) and concluding that a subrogee does not have the necessary privity of contract with the government); Fid. & Guar. Ins. Underwriters v. United States, 119 Fed. Cl. 195, 198-99 (2014) (reviewing a claim under 28 U.S.C. § 1491(a)(2) and holding that a subrogation claim does not arise under the CDA because the subrogee is not a party to a government contract).  Second, AEGIS's purported assignment of its subrogation claims is invalid under the Anti-Assignment Act because the claims have not been decided and the United States has not recognized the assignment.  See 31 U.S.C. § 3727(a)-(b) (explaining that the Act generally renders ineffective the assignment of a claim against the United States); id. § 3727(b) (permitting an assignment after the amount of the claim has been decided); Tuftco Corp. v. United States, 614 F.2d 740, 745 (Ct. Cl. 1980) (allowing an assignment if the government has recognized the assignment).

KCP&L is also mistaken inasmuch as it maintains that it has a right—independent of any assignment—to recover damages from defendant for expenses that were already reimbursed by AEGIS.  As the United States Court of Appeals for the Federal Circuit ("Federal Circuit") explained in LaSalle, a "general principle" of contract law is "that the non-breaching party is not entitled, through the award of damages, to achieve a position superior to the one it would reasonably have occupied had the breach not occurred."  317 F.3d at 1371.  Therefore, "[w]here the defendant's wrong or breach of contract has not only caused damage, but has also conferred a benefit upon plaintiff . . . which he would not otherwise have reaped, the value of this benefit must be credited to defendant in assessing the damages."  Id. (quoting Charles T. McCormick, Handbook on the Law of Damages 146 (1935)).  This principle, however, is not absolute; it is tempered by the collateral source rule.  See id. at 1373.  Under that rule, "collateral benefits received by the injured party do not reduce the damages owed by the wrongdoer . . . when there is a tortious or negligence component to the breach, or when the equitable balance is such that any windfall should not benefit the wrongdoer."  Id.

---

[15]  KCP&L presented this theory in its initial response brief, see Pl.'s Resp. 22 ("AEGIS did not just throw away its right to recover $3 million from the government via subrogation. AEGIS assigned that right to KCP&L."); accord id. (noting that AEGIS "assign[ed] that subrogation right to KCP&L"), but disavowed the theory in its supplemental response brief as a "mischaracterization" of the rights it is litigating and a "poor choice of words," Pl.'s Suppl. Resp. 14-15; accord id. at 12 ("KCP&L took legal positions in its prior summary judgment brief that, in retrospect, did not properly characterize the facts, and which KCP&L now clarifies.").

The Federal Circuit's discussion in <u>LaSalle</u> of the principles governing recoveries for breach-of-contract claims appears directly applicable to the instant dispute concerning the GSA's purported breach of its contractual duty to indemnify KCP&L.  Nonetheless, KCP&L urges the court to adopt the conclusion in <u>Sweet</u> that the limiting principles in <u>LaSalle</u> are not applicable to duty-to-indemnify claims.  In <u>Sweet</u>, another judge on the Court of Federal Claims distinguished <u>LaSalle</u> based on the contractual duty at issue and held that the plaintiffs could recover on an indemnification claim despite already being reimbursed by their insurer.  63 Fed. Cl. at 598.  This court, however, is not bound by <u>Sweet</u>.  <u>See</u> <u>Dellew</u>, 855 F.3d at 1382 n.3.  Furthermore, the court declines to follow the conclusion in <u>Sweet</u> for three reasons.  First, <u>Sweet</u> reads an exception into the Federal Circuit's rule that is untethered to the text of <u>LaSalle</u>.  <u>See</u> <u>Sweet</u>, 63 Fed. Cl. at 598 (discussing nonprecedential decisions and stating that "[g]iven the weight of [that] authority, the court agrees . . . that <u>LaSalle Talman</u> is not controlling in this indemnity case").  Second, <u>Sweet</u> does not explain the conclusion that traditional theories of contract remedies should not apply in the indemnification context.  Third, the decision in <u>Sweet</u> is distinguishable and the relevant analysis arguably is dicta because the plaintiffs in that case were not seeking a windfall—they noted at oral argument their obligation to reimburse their insurers. <u>Id.</u> at 598 n.5.  In light of the above, the court concludes that a claim for a breach of an indemnification agreement is subject to the rule in <u>LaSalle</u>:  a double recovery will only be permitted "when there is a tortious or negligence component to the breach, or when the equitable balance is such that any windfall should not benefit the wrongdoer."  317 F.3d at 1372; <u>see also</u> <u>Coltec Indus., Inc. v. United States</u>, 454 F.3d 1340, 1353 (Fed. Cir. 2006) ("There can be no question that the Court of Federal Claims is required to follow the precedent of the Supreme Court, our court, and our predecessor court, the Court of Claims.").

Applying the principles set forth in <u>LaSalle</u> leads to the conclusion that KCP&L is not entitled to a double recovery.  The GSA's purported breach of contract did not involve a tortious or negligence component because the breach flows (if at all) from a disagreement centered on conflicting interpretations of the GSA's contractual responsibilities in an unsettled area of law. <u>See</u> <u>United Protective Workers of Am., Local No. 2 v. Ford Motor Co.</u>, 223 F.2d 49, 54 (7th Cir. 1955) (noting that the breaching party was "not a wrongdoer in the tort sense" when "[t]he dispute before [the court] arose because the parties interpreted their contract differently, and the principles of law had not been clearly settled previously"), <u>cited in</u> <u>LaSalle</u>, 317 F.3d at 1372.  For the same reason, the balance of equities also does not weigh in KCP&L's favor; the court is not persuaded that there is good reason to permit a double recovery for a garden-variety breach of contract.  Because the collateral source rule does not apply, KCP&L is barred from recovering expenses that were reimbursed by AEGIS.

In sum, KCP&L is not entitled to recover the damages it requests for its expenses that AEGIS reimbursed regardless of whether KCP&L is seeking such expenses based on its own claims or those that were assigned to it by AEGIS.  Therefore, the court grants defendant's motion for summary judgment with respect to damages and reduces KCP&L's potential recovery by the amount of KCP&L's claimed damages attributable to expenses that AEGIS reimbursed.

## V.  CONCLUSION

For the reasons stated above, the court **GRANTS IN PART** and **DENIES IN PART** defendant's motion for summary judgment.  Specifically, defendant is not entitled to summary judgment on the merits of KCP&L's duty-to-indemnify claim.  Defendant, however, is entitled to summary judgment on KCP&L's duty-to-defend claim and that portion of KCP&L's request for damages that is premised on expenses that AEGIS reimbursed.  Therefore, KCP&L's only remaining claim is its duty-to-indemnify claim, and KCP&L's potential recovery is limited to damages for its expenses that AEGIS did not reimburse.

The parties, **by no later than Thursday, May 9, 2019**, shall file a joint status report in which they suggest further proceedings in this case.

**IT IS SO ORDERED.**

s/ Margaret M. Sweeney
MARGARET M. SWEENEY
Chief Judge