# In the United States Court of Federal Claims

No. 15-348C
(Filed: February 27, 2020)
NOT FOR PUBLICATION

```
*************************************
KANSAS CITY POWER & LIGHT CO.,       *
                                     *
            Plaintiff,               *
                                     *
v.                                   *   RCFC 37; Motion to Compel;
                                     *   Interrogatories
                                     *
THE UNITED STATES,                   *
                                     *
            Defendant.               *
*************************************
```

## ORDER

On November 18, 2019, defendant moved to compel Kansas City Power & Light Co. ("KCP&L") to provide complete responses to Interrogatory Nos. 11 and 13 pursuant to Rule 37 of the Rules of the United States Court of Federal Claims ("RCFC").[1] Defendant argues that KCP&L made unsupported objections to each interrogatory and failed to provide complete answers. Defendant's motion to compel is now ripe for adjudication, and the court grants the motion.

## I. BACKGROUND

KCP&L was contracted to provide electrical service to the United States General Services Administration ("GSA") at the Hardesty Federal Complex in Kansas City, Missouri. Pursuant to that contract, the GSA was required to

> indemnify, save harmless and defend [KCP&L] against all claims, demands, cost or expense, for loss, damage or injury to persons or property, in any manner directly or indirectly connected with, or growing out of the distribution or use of the electric service by the [GSA] at or on the [GSA's] side of the point of delivery.

Compl. Ex. 6 at 22.

On August 10, 2006, David Eubank, a GSA employee, was injured and subsequently died

---

[1] Defendant also moved to compel a response to Interrogatory No. 14, but, as explained below, defendant withdrew that request.

after coming into contact with electrical equipment—specifically switch 6530—in Hardesty Federal Complex building 13. Mr. Eubank's widow subsequently sued KCP&L for damages and then reached a settlement with KCP&L. The GSA refused to defend KCP&L during that lawsuit or indemnify KCP&L for its litigation expenses or settlement costs. KCP&L alleges in this suit that defendant breached its contractual obligation to provide indemnification. The parties are now engaged in discovery; among its discovery requests, defendant served KCP&L with Interrogatory Nos. 11 and 13.

### A. Interrogatory No. 11

In Interrogatory No. 11, defendant requests that KCP&L

> identify, in detail, all bases, legal and factual, for KCP&L's belief, if any, that the Government—including but not limited to the United States General Services Administration—was engaged in "the distribution or use of electric service," as described in paragraph 4.12, at the time of Mr. Eubank's accident on August 10, 2006.

Def.'s Feb. 21, 2020 Status Report ("Status Report") Ex. A at 1. KCP&L answered that interrogatory by stating that it

> defines "electric service" as [the term] is defined by the applicable Tariff as the "availability of electric power and energy at the point of delivery." KCP&L supplied the Government with electrical service under the terms of the Area-Wide Public Utility Contract and the General Rules and Regulations Applying to Electrical Service . . . .

Id. (citations omitted). And KCP&L then stated:

> Fact #1: The "point of delivery" is the pothead, since that is where the Government's installation met KCP&L's conductors/equipment (KCP&L's underground feeder lines).
>
> . . . .
>
> Fact #2: Electric power and energy were available at the point of delivery ("electrical service" was being provided), and that electric power and energy was flowing beyond the point of delivery (the pothead) to the Government's electrical equipment at the time of the accident. KCP&L's responsibility for the quality of service and operation of its facilities ended at the point of delivery (the pothead), and the flow of electrical power and energy past that point was the Government's use or distribution of "electric service".

Id. at 2-3. KCP&L concluded its response by reiterating that "the flow and presence of electrical power and energy extended beyond the point of delivery where electric service was supplied into the Government's electrical equipment, and this constituted the Government's 'use' or

'distribution' of electrical service." Id. at 4.

### B. Interrogatory No. 13

In Interrogatory No. 13, defendant requests that KCP&L

> [d]escribe in detail the history of and circumstances surrounding KCP&L's operation of switch 6530 in the Hardesty Federal Complex, including the identity of the entity or individual(s) . . . that opened switch 6530 prior to Mr. Eubank's accident, along with any facts that support this identification; to the extent that your response states that KCP&L was not responsible for switch 6530 being open at the time of Mr. Eubank's accident, please identify all facts relied on by KCP&L to support this response.

Id. KCP&L responded that the government constructed building 13 in 1941, KCP&L was not involved in configuring or engineering the building, the GSA bought the complex (including the equipment) in 1960, the government is responsible for maintaining and operating the equipment (or hiring someone to do so), the contract reflects that the government would do its own switching, and KCP&L would perform such switching upon request. Id. at 4-5. KCP&L then discussed events surrounding the accident in 2006 and stated that it "has no records reflecting who opened the switch prior to . . . June 29, 2006, and has no records that KCP&L opened it, or regarding the identity of the person who was the last to open it before or after June 29, 2006." Id. at 5.

## II. PROCEDURAL HISTORY

Defendant originally moved to compel responses to Interrogatory Nos. 11, 13, and 14 based on challenges to KCP&L's objections and substantive answers. In its response to the motion to compel, KCP&L withdrew its objections to each of those interrogatories because it wanted the focus to be on the substance of its answers. Defendant then withdrew its request to compel a complete answer to Interrogatory No. 14. The court subsequently directed the parties to confer in an attempt to resolve the discovery dispute without further court involvement. On February 21, 2020, defendant filed a status report in which it stated that KCP&L provided amended responses, set forth above, that remain inadequate.

## III. LEGAL STANDARD

It is "axiomatic that a trial court has broad discretion to fashion discovery orders[.]" White Mountain Apache Tribe of Ariz. v. United States, 4 Cl. Ct. 575, 583 (1984); see also Schism v. United States, 316 F.3d 1259, 1300 (Fed. Cir. 2002) (en banc) ("A trial court 'has wide discretion in setting the limits of discovery.'" (quoting Moore v. Armour Pharm. Co., 927 F.2d 1194, 1197 (11th Cir. 1991))). Although discovery rules "are to be accorded a broad and liberal treatment," Hickman v. Taylor, 329 U.S. 495, 507 (1947), the court must, "[i]n deciding either to compel or quash discovery, . . . balance potentially conflicting goals," Evergreen Trading, LLC ex rel. Nussdorf v. United States, 80 Fed. Cl. 122, 126 (2007). Thus, "discovery, like all matters of procedure, has ultimate and necessary boundaries." Hickman, 329 U.S. at 507.

When a party is dissatisfied with the responses to its discovery requests, the party may seek an order from the court compelling a more satisfactory response. Specifically, under RCFC 37, when a party fails to fulfill its discovery obligations, the "party seeking discovery may move for an order compelling an answer, designation, production, or inspection." RCFC 37(a)(3)(B). A motion to compel is appropriate when a party "fails to answer an interrogatory under RCFC 33 . . . ." RCFC 37(a)(3)(B)(iii). And "an evasive or incomplete . . . response must be treated as a failure to . . . respond." RCFC 37(a)(4).

"In order to succeed on a motion to compel discovery, a party must first prove that it sought discovery from its opponent." Petrucelli v. Bohringer & Ratzinger, 46 F.3d 1298, 1310 (3d Cir. 1995). Additionally, an RCFC 37 motion "must include a certification that the movant has in good faith conferred or attempted to confer . . . ." RCFC 37(a)(1). Like its Federal. Rules of Civil Procedure counterpart, RCFC 37 "does not set forth what must be included in the moving party's certification except to indicate that the document must declare that the movant has 'in good faith conferred or attempted to confer' . . . ." Shuffle Master, Inc. v. Progressive Games, Inc., 170 F.R.D. 166, 171 (D. Nev. 1996). Conferment, in turn, requires that the movant "personally engage in two-way communication with the nonresponding party to meaningfully discuss each contested discovery dispute in a genuine effort to avoid judicial intervention." Id.

## IV. ANALYSIS

### A. Interrogatory No. 11

Defendant first argues that KCP&L's answer to Interrogatory No. 11 is deficient because it provides no legal or factual basis for its statement that "the flow and presence of electrical power and energy extended beyond the point of delivery where electric service was supplied into the Government's electrical equipment, and this constituted the Government's 'use' or 'distribution' of electrical service." Status Report 2 (quoting Status Report Ex. A at 4). KCP&L maintains that it did so by stating that "the indemnity agreement is triggered by 'loss, damage, or injury' resulting from any electricity beyond the point of delivery and that all electricity beyond the point of delivery constitutes distribution or use." KCP&L Resp. Br. 4.

KCP&L's answer to Interrogatory No. 11 is incomplete. In relevant part, KCP&L merely makes the conclusory statement that "the flow of electrical power past [the point of delivery] was the Government's use or distribution of the 'electric service.'" Status Report Ex. A at 3. With its response, KCP&L fails to explain the factual and legal basis for its belief that electricity beyond the point of delivery constitutes distribution or use. KCP&L must remedy the incomplete answer by stating the basis for its belief.

### B. Interrogatory No. 13

Defendant also argues that KCP&L's answer to Interrogatory No. 13 is incomplete because KCP&L (1) provides no information about its operation of the switch prior to June 29, 2006, and (2) suggests that it has policies or practices related to when it will operate the switch but failed to provide information on those policies/practices. KCP&L counters that defendant failed to satisfy the meet-and-confer requirements because defendant's counsel did not attempt to

amicably resolve the issues prior to filing its motion to compel.[2]

KCP&L's meet-and-confer argument is a threshold procedural consideration because a party must make a good faith effort to confer with the opposing party before filing a motion to compel. See RCFC 37(a)(1). KCP&L's argument here is mooted by the fact that, after briefing was completed, the parties were directed to confer regarding their discovery dispute and seemingly did so on January 21, 2020. See Status Report 1. On the merits, KCP&L makes no argument that has not been waived, see supra note 2 (explaining KCP&L waived its arguments concerning objections), and its answer to Interrogatory No. 13 is substantively incomplete. First, KCP&L has not addressed its operation of the switch prior to June 29, 2006, despite defendant requesting such information. Second, KCP&L fails to explain its policies and procedures with respect to operating the switch even though the underlying contract and deposition testimony reflect that KCP&L contemplated such operations. Indeed, KCP&L acknowledged in its answer that it "would perform switching upon request or assist the customer with switching upon request," Status Report Ex. A at 5, and a KCP&L employee indicated that employees operated the switch in the past, see id. Ex. B (Joyce Dep.) (responding "no" when asked if he felt like he needed permission from the GSA to "either open or close the switches"). KCP&L, therefore, seemingly had policies related to the switch that are not discussed in its interrogatory response despite defendant requesting that information. KCP&L must rectify its incomplete response to Interrogatory No. 13 by providing information on its (1) operation of switch 6530 prior to June 29, 2006, and (2) policies with respect to the operation of switch 6530.

## V. CONCLUSION

In light of the above, the court **GRANTS** defendant's motion to compel KCP&L to provide additional information in response to Interrogatory Nos. 11 and 13. KCP&L is directed to complete its answer to Interrogatory No. 11 by explaining the factual and legal basis for its belief that electricity beyond the point of delivery constitutes distribution or use. Additionally, KCP&L is directed to supplement its answer to Interrogatory No. 13 by providing information on its (1) operation of switch 6530 prior to June 29, 2006, and (2) policies with respect to the operation of switch 6530. The court further **DIRECTS** KCP&L to serve its amended responses on defendant **by no later than March 12, 2020.**

**IT IS SO ORDERED.**

                                                                                               s/ Margaret M. Sweeney
                                                                                               MARGARET M. SWEENEY
                                                                                               Chief Judge

---

[2] KCP&L also argues that defendant's revisions to Interrogatory No. 13 "did nothing to remedy the overbroad, vague, and ambiguous or burdensome nature of the request, or respond to KCP&L's objections on those grounds." KCP&L Resp. Br. 7. But KCP&L stated that it was waiving those objections. Id. at 1 ("[KCP&L] withdraws all objections so the parties and Court can focus on [the] substance of the answers.").